RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0243P (6th Cir.)
File Name: 04a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*                          No. 02-4234

CRAIG MONTGOMERY,
    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00056—S. Arthur Spiegel, District Judge.

Argued: April 26, 2004

Decided and Filed: July 27, 2004

Before: BOGGS, Chief Judge; KENNEDY, Circuit Judge;
RUSSELL, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Richard W. Smith-Monahan, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for

_____

[*] The Honorable Thomas B. Russell, United States District Judge from
the Western District of Kentucky, sitting by designation.

Appellant. Timothy D. Oakley, UNITED STATES
ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:**
Richard W. Smith-Monahan, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant.
Timothy D. Oakley, UNITED STATES ATTORNEY,
Cincinnati, Ohio, for Appellee.

_____

### OPINION

_____

KENNEDY, Circuit Judge. Defendant Craig Montgomery
("defendant") appeals the district court's denial of his motion
to suppress the crack cocaine that law enforcement officers
seized during a search of his person, following a traffic stop
of the vehicle in which he was a passenger. Preserving his
right to appeal the validity of that search, defendant pleaded
guilty to one count of possession with the intent to distribute
over five grams of crack cocaine in violation of 21 U.S.C.
§§ 841(a)(1) and (b)(1)(B)(iii). For the following reasons, we
AFFIRM the district court's denial of defendant's suppression
motion.

### I. Background

At approximately 8:00 p.m. on April 16, 2002, Trooper
Brian Workman ("Workman"), of the Ohio State Highway
Patrol, lawfully stopped a vehicle in Scioto County, Ohio, for
a speeding violation. Workman learned that the driver of the
vehicle, Meyah McCrory ("McCrory"), had been operating
the vehicle on a suspended license. According to Workman,
the vehicle's passengers appeared very nervous. Trooper
Terry Mikesh ("Mikesh"), also of the Ohio State Highway
Patrol, arrived at the scene to offer assistance. After
requesting driver McCrory to exit the vehicle, Workman
advised her that she had been driving on a suspended license,
and placed her in the back of his patrol car. While checking
the other occupants' identifications, Mikesh, with the use of

a flashlight, observed a stem, approximately one-inch long, on the driver's floorboard near the center console. Based upon her training in and experience with the detection of narcotics, Mikesh was confident from her visual inspection that it was marijuana. Rand Simpson Jr. ("Simpson"), the right front passenger, reached for the stem, and Mikesh yelled at him to put it down. Mikesh showed Workman the marijuana stem. As Workman testified, he was able to observe the stem, which was large and still had vegetation attached to it, from outside of the vehicle, and he believed it to be marijuana based upon his narcotics-detection training.

Mikesh advised the occupants that the troopers were going to search the vehicle based upon their observation of marijuana in the vehicle, and that the occupants were in "investigative custody" pending the completion of the search. Mikesh also advised them of their *Miranda* rights. Workman testified that, at that point, no one was under arrest. Rather, according to Workman, they were in "investigative custody" and received *Miranda* warnings based upon the troopers' discovery of marijuana in the vehicle. Workman observed Jamaal Richardson ("Richardson"), the left rear passenger, shove a blue object underneath the back seat's armrest.

The troopers ordered the occupants, including defendant, the right rear passenger, out of the vehicle. Workman and Mikesh performed "protective pat-downs for weapons," and, with each occupant's consent, examined the contents of his pockets. The troopers then placed the occupants in another patrol car, which had subsequently arrived at the scene, to prevent them from fleeing the scene or from standing on the dangerous roadside. Upon searching the vehicle's interior, the troopers recovered the large marijuana stem on the driver's side, marijuana seeds, and a blue digital scale, which Richardson had hidden underneath the backseat armrest and which had residue in the form of green leafy material and white powder on it. Workman identified the white and green residue on the scale as cocaine and marijuana, respectively.

After searching the vehicle, the troopers asked defendant to exit the patrol car. Workman, with the intent of checking defendant for any narcotics or paraphernalia, again patted defendant down and then ordered him to remove his shoes. A bag containing crack cocaine lay in one of defendant's shoes. According to Workman, defendant was then placed under custodial arrest. Mikesh advised defendant of his *Miranda* rights for the second time. Subsequent field and laboratory tests revealed that the large stem was, in fact, marijuana.

Defendant filed a motion to suppress the crack cocaine found in his shoe.[1] The district court held that the troopers' search of defendant's shoes did not violate the Fourth Amendment because it was a search incident to a lawful arrest. In particular, the court found that the troopers had arrested defendant at the time that they placed him in the back of the patrol car, and that they had probable cause to arrest defendant based upon: 1) the marijuana in plain view; 2) passenger Simpson's attempt to conceal the marijuana from the troopers; 3) passenger Richardson's concealment of something under the armrest; and 4) the apparent nervousness of all of the occupants.

## II. Analysis

We review the district court's legal conclusions in a suppression hearing *de novo,* and its factual findings for clear error. *United States v. Smith*, 263 F.3d 571, 581-82 (6th Cir.

---

[1] In this suppression motion, defendant also challenged the admissibility of any incriminating statements that he made to the troopers following their seizure of the crack cocaine on the ground that such admissions violated his Fifth Amendment *Miranda* rights; the district court denied this challenge. By failing to present any argument on it in his brief, defendant has abandoned this Fifth Amendment issue on appeal. *See Sommer v. Davis,* 317 F.3d 686, 691 (6th Cir. 2003) (holding that plaintiffs abandoned an issue on appeal by not presenting any argument on it in their briefs).

2001); *see United States v. Forest*, 355 F.3d 942, 952 (6th Cir. 2004) (holding that whether the facts establish probable cause to justify an arrest is a question of law that we review *de novo*)*; United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1997) (holding that whether the facts establish an unconstitutional seizure is a question of law that we review *de novo*). When considering the denial of a suppression motion, we must view the evidence in the light most favorable to the government. *United States v. Wellman, Jr.*, 185 F.3d 651, 654-55 (6th Cir. 1999). "We may affirm a decision of the district court if correct for any reason, including one not considered below." *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 750 (6th Cir. 2003).

Defendant does not contest that Workman had probable cause to stop the vehicle in which defendant was a passenger for a speeding violation. Defendant also does not dispute that the troopers had probable cause to search the vehicle. In addition, the troopers were clearly justified in ordering defendant out of the vehicle pursuant to either the routine traffic stop or the lawful vehicle search. *See Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997) (extending the rule in *Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977), that "a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle" to any passengers in such a vehicle). Based upon the nervousness of all of the occupants, the marijuana stem in plain view, Simpson's and Richardson's attempts to conceal the marijuana stem and an unknown object, respectively, it was reasonable for the troopers to believe that defendant may have been armed and dangerous so as to justify patting him down for weapons after he exited the vehicle. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). Defendant, however, asserts that the troopers lacked the requisite justification to conduct the subsequent,

warrantless search of defendant's shoes, from which the crack cocaine was seized.[2]

Under the "search-incident-to-a-lawful-arrest" exception to the warrant requirement, a law enforcement officer may conduct a full search of an arrestee's person incident to a lawful custodial arrest. *United States v. Robinson*, 414 U.S. 218, 234-35 (1973) (explaining that the reasoning behind this exception is the "need to disarm the suspect in order to take him into custody [and] . . . the need to preserve evidence on his person for later use at trial"). Moreover, as the Supreme Court held in *Rawlings v. Kentucky*, 448 U.S. 98, 110-11 n.6 (1980), the search-incident-to-a-lawful-arrest rule also permits an officer to conduct a full search of an arrestee's person *before* he is placed under lawful custodial arrest as long as "the formal arrest follow[s] quickly on the heels of the challenged search of . . . [his person]" and the fruits of that search are not necessary to sustain probable cause to arrest him. *C.f. Knowles v. Iowa*, 525 U.S. 113, 116-19 (1998) (holding that the search-incident-to-a-lawful-arrest rule does not apply to an officer's search of the defendant's vehicle where the officer, while subsequently arresting the defendant for drug-law violations based upon that search, never actually arrested the defendant for the speeding violation, which gave

---

[2]There was no reasonable concern for officer safety so as to justify, under the *Terry* doctrine, this search of defendant's person; indeed, Workman testified that he conducted the search solely to check defendant for narcotics or drug paraphernalia. *See Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979) (cautioning that the *Terry* doctrine, which created a narrow exception to the normal dictates of the Fourth Amendment, does not permit a "generalized cursory search for weapons" or "any search whatever for anything but weapons"). Yet, this warrantless evidentiary search may, nevertheless, be valid if it falls within an exception to the warrant requirement. *See United States v. Haddix*, 239 F.3d 766, 767 n.2 (6th Cir. 2001) (summarizing the leading exceptions to the warrant requirement as, among others, "investigatory detentions, warrantless [public] arrests, searches incident to a valid arrest, seizure of items in plain view, exigent circumstances, consent searches, vehicle searches") (internal quotation marks omitted).

the officer the probable cause to arrest the defendant before the search, but, rather, only issued a citation, and reasoning that the rule's underlying twin rationales of officer safety and evidence preservation were only minimally present and not present at all, respectively, in the context of a traffic citation); *Smith v. Ohio*, 494 U.S. 541 (1990) (holding that the search-incident-to-a-lawful-arrest rule does not apply to a warrantless search that provides the probable cause for the subsequent arrest because one cannot justify the arrest by the search and then simultaneously justify the search by the arrest).

The district court found that, at the time of the search of defendant's shoes, the troopers had seized defendant within the meaning of the Fourth Amendment. A reasonable person would not have felt free to leave the scene based upon the following circumstances:  1) three patrol cars were at the scene; 2) the troopers observed marijuana in plain view in the vehicle, in which defendant was a passenger; 3) Mikesh yelled at passenger Simpson to put the marijuana stem down; 4) defendant had been ordered out of the vehicle, frisked, and placed in the back of a patrol car; 5) Mikesh read defendant his *Miranda* warnings; and 6) the troopers searched the vehicle. *See United States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000) ("A 'seizure' occurs . . . when the police detain an individual under circumstances where a reasonable person would feel that he or she is not at liberty to leave"); *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (illustrating circumstances indicating a seizure as follows:  "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled'") (citing *United States v. Mendenhall*, 446 U.S. 544 (1980)).  However, it is unclear whether this "seizure" was a full custodial arrest, rather than

a mere investigative detention under the progeny of *Terry,*[3] for purposes of the search-incident-to-a-lawful-arrest exception.[4] *See United States v. Avery*, 137 F.3d 343, 352

---

[3]Although neither the government nor defendant seem to challenge the district court's determination that the troopers had arrested defendant at the time that they placed him in the back of the patrol car, we have some reservations about the accuracy of this determination. It is uncertain whether the troopers' ordering defendant out of the vehicle, frisking him, and placing him in the back of a patrol car are circumstances sufficient in themselves to escalate the detention into a custodial arrest given that the legality of the troopers' action here does not seem to hinge upon any such arrest. Rather, as discussed above, even without arresting defendant, the troopers had sufficient justification to order defendant out of the vehicle and to frisk him. Based upon the lawful vehicle search, the troopers likely had adequate justification to place defendant in the back of the patrol car both for his and the troopers' safety pending the completion of that search. There is no evidence that the troopers, at the time they placed defendant in the back of the patrol car, had drawn their weapons, handcuffed defendant, or used physical force to place him in the patrol car. Moreover, while Mikesh advised defendant of his rights under the *Miranda* doctrine, whose application requires that one be subject to a formal arrest or its *de facto* equivalent, she simply informed defendant that he was in "investigative custody" pending the completion of the vehicle search; she never told defendant that he was under arrest at that time. *See Stansbury v. California*, 511 U.S. 318, 322 (1994). To the extent that he may have conveyed his subjective intent to defendant, Workman testified that defendant was not under arrest at that point. *See United States v.* Rose, 889 F.2d 1490, 1493 (6th Cir. 1989) (holding that officers' subjective intent is relevant to a Fourth Amendment analysis only to the extent that they have conveyed that intent to the confronted individual). In any event, we need not decide this issue because we find that, whether the troopers arrested defendant upon placing him in the patrol car or only after they conducted the search of his shoes, the search-incident-to-a-lawful-arrest rule applies so as to justify that search.

[4]As Professor Joshua Dressler aptly observed, the Supreme Court has yet to apply the search-incident-to-a-lawful-arrest rule to any context other than a full custodial arrest. Dressler argues that the twin rationales underlying this exception–evidence preservation and officer safety–do not apply or only marginally apply in the context of a non-custodial arrest or temporary detention. Understanding Criminal Procedure § 13.02 (2d ed. 1997) (reasoning that the context of a custodial arrest poses a far greater danger to the officer than one of temporary detention as, in the latter

(6th Cir. 1997) (noting that a "seizure" for purposes of the Fourth Amendment comprises either a *Terry* investigative detention requiring "reasonable, articulable suspicion of criminal activity" or an arrest requiring probable cause); *compare Kaupp*, 538 U.S. at 630 (holding that law enforcement's involuntary transportation of a suspect to a police station for questioning constitutes a *de facto* arrest requiring probable cause), *with Houston v. Clark County Sheriff Deputy John Does 1-5,* 174 F.3d 809, 814-15 (6th Cir. 1999) (holding that, where police officers reasonably believed that a vehicle's occupants had just been involved in a shooting, the officers' ordering the suspects out of the vehicle, drawing their weapons on them, frisking and handcuffing them, and detaining them in the back of patrol cars did not exceed the bounds of a *Terry* investigative detention) *and United States v. Bradshaw*, 102 F.3d 204, 211-12 (6th Cir. 1996) (holding that "detention in a police car does not automatically constitute an arrest," but recognizing that it "may rise to the level of an arrest in some circumstances").

In any event, even if the troopers had not placed defendant in full custodial arrest before the search of his person, it is clear that they did so immediately after that search–after they discovered crack cocaine in his shoe. Mikesh testified that, after the discovery of that crack cocaine, she informed defendant that he was under arrest and, once again, advised him of his *Miranda* rights. Workman also testified that defendant was placed under arrest at that time. Thus, regardless of whether the troopers placed defendant in full custodial arrest before or immediately after the evidentiary search of his person, the search-incident-to-a-lawful-arrest rule would validate that search as long as the troopers, independent of the crack cocaine seized during that search, had probable cause to arrest defendant at the time of that

situation, the suspect has less incentive to use a weapon or to destroy evidence, and the officer need not transport the suspect to the police station).

search. Chiefly relying upon *United States v. Di Re,* 332 U.S. 581 (1948), defendant argues that, while the troopers had probable cause to arrest the vehicle's other occupants, they lacked probable cause to arrest defendant because his conduct did not provide them with sufficient individualized suspicion regarding his involvement in any illegal activity. Rather, according to defendant, the facts and circumstances available to the troopers establish, at most, that defendant, by virtue of being a passenger in the vehicle, was in proximity to the other occupants' drug-related activity.

In *United States v. Di Re,* 332 U.S. 581, 583, 592-94 (1948), the Supreme Court held that, under state law, officers lacked probable cause to arrest the defendant, who was ultimately convicted of knowingly possessing counterfeit gasoline ration coupons. In *Di Re*, law enforcement officers approached a vehicle that contained Buttitta (the driver of the vehicle); Reed (an informer who previously had advised the officers that he was to buy counterfeit gasoline ration coupons from Buttitta); and the defendant (who was sitting next to Buttitta). *Id.* at 583. When the officers, upon approaching the vehicle, observed that Reed was holding two of these coupons – which later proved to be counterfeit – and asked Reed who had given him the coupons, Reed inculpated only Buttitta. *Id.* The officers placed the defendant, along with Buttitta and Reed, under custodial arrest. *Id.* During a subsequent search of the defendant's person, officers recovered over one hundred counterfeit gasoline ration coupons from his shirt and underwear. *Id.*

The Court held that the officers had no probable cause to arrest the defendant for committing, in the officers' presence, the misdemeanor of knowing possession of counterfeit coupons. *Id.* at 592. The Court reasoned that only Reed was visibly in possession of the coupons, and that the officers had no evidence demonstrating the defendant's possession of any coupons, "unless his presence in the car warranted that inference." *Id.* (rejecting, likewise, the contention that the officers had probable cause to arrest the defendant for a

felony entailing both possession of the coupons and knowledge of their counterfeit nature). The Court then held that the defendant's presence in the car was insufficient to imply his participation in the Buttitta-Reed sale and, thus, insufficient to sustain probable cause for any felony conspiracy charge. *Id.* at 593. The Court reasoned that there was no evidence indicating that the defendant was in the vehicle when Buttitta had given the coupons to Reed. *Id.* The Court further reasoned:

> [The inference] that one who accompanies a criminal to a crime rendezvous cannot be assumed to be a bystander, *forceful enough in some circumstances,* is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal.

*Id.* (internal quotation marks omitted, and emphasis added). As the Court noted, even if the defendant had witnessed the transfer of the coupons, the counterfeit nature of those coupons would not have been readily apparent to him. *Id.* The Court underscored that, where the government informer singles out as the guilty party only an individual other than the defendant, any inference or suspicion arising from the defendant's presence at the crime scene must disappear. *Id.* at 594.

However, in *Maryland v. Pringle,* – U.S. –, 124 S.Ct. 785, 798 (2003), on facts similar to those present here, the Supreme Court held that law enforcement officers had probable cause to arrest the defendant. In *Pringle,* police officers, based upon a speeding violation, had pulled over a vehicle, in which there were three occupants, one of whom was the defendant, the front-seat passenger. *Id.* When the driver opened up the glove compartment to retrieve the vehicle's registration, the officers observed a large roll of cash. *Id.* Upon a consent search of the vehicle, the officers

recovered $763 from the glove compartment and five plastic bags containing cocaine from behind the back-seat armrest. *Id.* The officers placed all three occupants under arrest when, upon questioning, none of them offered any information regarding the ownership of the drugs or the money. *Id.* (noting that the other two occupants were eventually released when the defendant, during interrogation, subsequently admitted ownership of the contraband and stated that they knew nothing about it). The defendant was convicted of possession and possession with intent to distribute cocaine. *Id.* at 799.

The Supreme Court noted that, although the officers had probable cause to believe that a felony had been committed upon recovering the cocaine from the vehicle, the question is whether they had probable cause to believe that the *defendant* committed that crime. *Id.* (looking to state law to determine the substantive crime as well as the law enforcement officers' authority to arrest). The Court first explained the probable-cause standard as follows:

> [It is a] practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends upon the totality of the circumstances . . . . [Its substance] is a reasonable ground for belief of guilt, [which] . . . must be particularized with respect to the person to be searched or seized.

*Id.* at 799-800 (internal quotation marks and citations omitted) (noting that the test is one of objective reasonableness based upon all of the facts leading up to the search or seizure in question). The Court then found that the

officers had probable cause to believe that the defendant had committed the crime of possession of a controlled substance. *Id.* at 802. The Court reasoned that the defendant was one of three men riding in the vehicle at 3:00 a.m.; there was a $763 roll of cash in the glove compartment directly in front of the defendant; there was cocaine behind the back-seat armrest that was accessible to all three men; and all three men failed to offer any information concerning the ownership of the cocaine or money. *Id.* at 800. The Court affirmed that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.* at 801 (factually distinguishing *Ybarra v. Illinois,* 444 U.S. 85, 91 (1979), and citing *Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999)) (internal quotation marks omitted). The Court held that "it was reasonable for the officer to infer a common enterprise among the three men [because] [t]he quantity of the drugs and cash in the car indicated a likelihood of drug dealing, an enterprise [into] which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id.* The Court distinguished *Di Re* on the ground that, unlike in that case, there was no singling out of an individual other than the defendant as the guilty individual as none of the three men provided any ownership information concerning the contraband. *Id.* Thus, the Court found that it was "an entirely reasonable inference from the[] facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine," and, thus, that "a reasonable officer could conclude that there was probable cause to believe that . . . [the defendant] committed the crime of possession of cocaine, *either solely or jointly*." *Id.* at 800-01 (emphasis added).

As *Pringle* teaches, the facts and circumstances within the troopers' knowledge here afforded an adequate basis from which reasonably to infer that defendant was engaged in a common narcotics-related enterprise with the other occupants of the vehicle. *See Michigan v. De Fillippo*, 443 U.S. 31, 37 (1979) (holding that probable cause exists when the "facts and

circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person , or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense"). The large marijuana stem, which was approximately one-inch long and still had vegetation attached to it, was in plain view on the driver's floorboard near the center console. Thus, defendant had both visual and physical access to the marijuana stem. Defendant had been sitting directly next to passenger Richardson when he concealed from the troopers the digital scale, which was visibly covered in drug residue. Therefore, defendant had ready physical access to the drug scale. Moreover, based upon Richardson's perceived need to conceal it in the first instance, one could reasonably conclude that the drug scale had been in plain view and, thus, that defendant had visible access to it as well. Simpson's and Richardson's attempts to conceal the marijuana stem and the scale from the troopers, respectively, demonstrated a shared interest in concealing the fruits of their wrong-doing. In addition, the drugs along with the digital scale, covered in drug residue and commonly used in the distribution of drugs, indicated a drug-dealing enterprise. As the Supreme Court observed, guilty parties would not likely admit an innocent person into such a criminal enterprise for fear of that person furnishing incriminating evidence against them. *Id.* at 801. Consequently, it would have been unreasonable to believe that all of the occupants except for defendant were engaged in a common drug-related enterprise. Unlike *Di Re*, there was no "singling out" or incrimination of the other three occupants to the exclusion of defendant. Thus, the troopers had probable cause to believe that defendant was violating various state drug laws–whether singly or jointly.[5] In sum,

---

[5] For example, the troopers had probable cause to believe that defendant knowingly and constructively possessed, whether jointly or singly, drug paraphernalia–the digital scale–, in violation of Ohio Revised Code § 2925.14, a fourth degree misdemeanor. *See* R.C. § 2925.01(K) (providing that "possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or

under the search-incident-to-a-lawful-arrest rule, the troopers' warrantless evidentiary search of defendant's person passes muster under the Fourth Amendment because the troopers had probable cause to arrest defendant independent of the search and because defendant's lawful custodial arrest either preceded the search or quickly followed it. *See Rawlings*, 448 U.S. at 110-11 n.6.

For the preceding reasons, we AFFIRM the district court's denial of defendant's suppression motion.

---

substance through ownership or occupation of the premises upon which the thing or substance is found"); *State v. Kobi*, 701 N.E.2d 420, 430 (Ohio Ct. App. 1997) (holding that "possession" under O.R.C. § 2925.01 may be actual or constructive; defining constructive possession as an ability to exercise dominion or control over the items; and holding that "readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence" of constructive possession of such drugs); *Ohio v. Hilton*, No. 21624, 2004 WL 573838, at *4 (Ohio Ct. App. March 24, 2004) (holding that possession may be joint, and that constructive possession may entail knowledge of the presence of the object). Moreover, since the digital scale appeared to contain cocaine residue, the troopers had probable cause to believe that defendant had knowingly and constructively possessed, whether jointly or singly, cocaine in violation of Ohio Revised Code § 2925.11(C)(4)(a), a crime which is, at a minimum, a fifth degree felony. *See State v. Teamer*, 696 N.E.2d 1049, 1051 (Ohio 1998) (affirming that O.R.C. § 2925.11 punishes the possession of *any* amount of a controlled substance without quantifying that amount, and, thus, affirming a conviction for knowing possession of cocaine based upon a metal crack pipe containing cocaine residue, which was incapable of being weighed). Under Ohio law, the troopers had authority to arrest defendant for either or both of these crimes. *See* Ohio Revised Code § 5503.02 (A) (providing that "any state highway patrol trooper may arrest, without a warrant, any person, who is the driver of or a passenger in any vehicle operated or standing on a state highway, whom the . . . trooper has reasonable cause to believe is guilty of a felony, under the same circumstances and with the same power that any peace officer may make such an arrest); Ohio Revised Code § 5503.02 (D)(1) (providing that "[s]tate highway patrol troopers have the same right and power of search and seizure as other peace officers"); *State v. Hummel*, 796 N.E.2d 558, 561 (Ohio Ct. App. 2003) (noting the general rule that an officer may not make a warrantless arrest for a misdemeanor unless the offense was committed in the officer's presence).