File Name: 06a0165n.06
Filed: March 2,2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-6473

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT WILLIAMS,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

—————————————————————/

Before:    **DAUGHTREY and COLE, Circuit Judges, and JOHN G. HEYBURN II, Chief District Judge**[*]

    **JOHN G. HEYBURN II, CHIEF DISTRICT JUDGE**. The Defendant/Appellant, Robert

Williams ("Williams"), pleaded guilty to felon in possession charges brought under 18 U.S.C. §

922(g). As part of that plea, Williams explicitly reserved the right to challenge the district court's

denial of his motion to suppress evidence discovered during a search of his person and his vehicle

at the time of his initial custody. The unusual circumstances of this case present several close

questions about the scope of an officer's authority under the Fourth Amendment. Based on the

totality of the circumstances, however, we conclude that the officers effectuated a lawful custodial

arrest and that the search at issue was constitutionally valid. Consequently, we affirm the district

—————————————————————

[*] The Honorable John G. Heyburn II, Chief United States District Judge for the Western
District of Kentucky, sitting by designation.

court.

I.

The underlying circumstances are somewhat unusual.  On May 9, 2002, Memphis Police

Officer Milton Gonzales ("Gonzales") and his partner, on routine patrol in the western portion of

the city,  observed a vehicle with its unlocked trunk "bouncing up and down."  Because the vehicle

generally matched the description of an automobile reported stolen earlier that day, the police

followed the car and later observed the driver disregard a stop sign.  Once the officers stopped the

offending driver, Gonzales ordered Williams out of the vehicle, patted him down for weapons, and

asked him for his license.  Williams could produce only a parole card for identification.[1]  At that

point, the officers handcuffed Williams and placed him in the back of their squad car while they

conducted a search of his vehicle.  Either during the pat-down of Williams or during the vehicle

search, Gonzalez and his partner "discovered a clip, a .380 magazine with . . . six rounds in the

magazine."[2]  Also during this time, the officers checked with the state authorities and determined

that Williams did not have a driver's license issued in his name.

Based on that discovery, the officers advised Williams of his rights and asked him to sign

---

[1]The government does not contend that Williams, as a parolee, had a reduced expectation
of privacy.  Accordingly, this Court will not address that issue.

[2]Although the district judge stated that the evidence "is undisputed that the ammunition
Williams seeks to suppress was found on his person," in the record before this Court the location
of the ammunition is unclear.  At the suppression hearing, the arresting officer stated that "I can't
remember if it was during the pat-down or the search of his vehicle, we discovered a clip . . . ,"
and "[i]t would have been the front of the car, passenger driver seat or on his person" where the
ammunition clip was found.  However, as we describe below, the location of the
ammunition–whether on his person or in his car–does not affect the legality of the search.

a waiver of rights form, which he did. Thereafter, the officers interrogated Williams in the vehicle. After completing their questioning, the officers issued Williams a misdemeanor citation for driving without a license and disregarding a stop sign, but released him from custody. The officers testified that they released Williams because they "knew where he was."

Eventually, a federal grand jury returned an indictment against Williams, charging him with being a convicted felon in possession of ammunition. Williams entered a plea of not guilty and filed a motion to suppress both the ammunition seized from Williams's car and the statements that he made during the interrogation. After an evidentiary hearing on the matter, the district judge ruled that the warrantless search was valid and that the motion to suppress evidence should be denied.

In light of the district court's ruling, Williams changed his plea to guilty, but specifically reserved the right to appeal the denial of the suppression motion to this Court. Following sentencing, during which the district judge ordered Williams to serve 180 months, Williams perfected this appeal.

## II.

We review a district court's factual findings on a suppression motion for clear error and its legal conclusions de novo. *United States v. Haynes*, 301 F.3d 669, 676 (6th Cir. 2002). Moreover, on appeal, the court "must consider the evidence in the light most favorable to the government." *Id.* Generally, an officer has the authority to search a vehicle incident to a lawful custodial arrest in order to disarm a suspect or preserve evidence of a crime. *See New York v. Belton*, 453 U.S. 454, 460 (1981). However, an officer does not have the authority to conduct a *Belton* search pursuant to issuance of a citation alone. *Knowles v. Iowa*, 525 U.S. 113, 118-19 (1998). Because Williams

admitted that he had been driving without a license immediately after the officers pulled him over, the officers' authority to conduct an arrest is not in dispute.[3] Therefore, the primary question here is whether the officers actually did effect a full custodial arrest, rather than a lesser degree of detention, before issuing the citation.

The question of whether police have effected a Fourth Amendment arrest can arise in one of two contexts: (1) when a detainee claims that an officer's investigatory stop was not supported by probable cause; and (2) when the government claims that an officer's warrantless search meets the search-incident-to-arrest exception. So far as we can determine, the Sixth Circuit has laid out the same criteria for analysis, regardless of the context. *Compare United States v. Marxen*, 410 F.3d 326, 332 (6th Cir. 2005) (the applicability of the probable cause standard depends on a fact-specific analysis of the "measures utilized by the police"), *with United States v. Hatfield*, 815 F.2d 1068, 1070-71 (6th Cir. 1987) (the applicability of the search-incident-to-arrest exception depends on a fact-specific analysis of the degree of force the officer used).

There is no bright-line test for determining when an investigatory stop crosses the line and

---

[3] Officer Gonzalez testified that Williams was arrested for driving without a license in violation of Tenn. Code Ann. § 55-50-351, which is a misdemeanor offense under Tennessee law. Although there is some question as to whether Tennessee law grants officers the authority to make an arrest for driving without a license, see Tenn. Code Ann. § 55-50-351 (defining driving without a license as a Class C misdemeanor); Tenn. Code Ann. §§ 55-10-207(a)(1), (f) (stating that for Class C misdemeanors, "the arresting officer shall issue a traffic citation . . . in lieu of arrest"), the lawfulness of an arrest under state law does not affect a federal court's interpretation of the Fourth Amendment in considering a motion to suppress. *See, e.g.*, *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994). Under the Fourth Amendment, an officer has the authority to arrest where he has probable cause to believe that a misdemeanor offense has been committed in his presence. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Therefore, the only question before this Court is whether Williams was actually arrested.

becomes an arrest. *See, e.g.*, *United States v. Lopez-Arias*, 344 F.3d 623, 627-28 (6th Cir. 2003).

[4] As we all agree, the analysis is a fact-sensitive inquiry, depending on the totality of the circumstances. *Id.* A court is to consider a variety of factors: (1) transportation of the detainee to another location; (2) significant restraints on freedom of movement involving physical confinement or other coercion; (3) use of weapons or bodily force; and (4) issuance of Miranda warnings. *See id.* (citing *United States v. Richardson*, 949 F.2d 851, 857 (6th Cir. 1991)); *United States v. Montgomery*, 377 F3d 582, 588 (holding that the reading of *Miranda* warnings is evidence of an arrest). No single factor is dispositive.

Applying the above factors to the present case, we find that Officer Gonzales and his partner effectuated a custodial arrest. In these somewhat unusual circumstances, the officers never transported Williams to the police station for booking or to any other location. However, a suspect's ultimate physical location is not the conclusive factor that defines an arrest. More important is the officers' treatment of Williams during the course of their encounter with him. First, before releasing

---

[4] The Sixth Circuit, like many other circuits, has struggled to find a workable definition of the term "arrest." Some cases have relied on the rule traditionally used to define a Fourth Amendment seizure. *See, e.g.*, *United States v. Saari*, 272 F.3d 804, 808 (6th Cir. 2001) (an arrest occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave") (quoting *United States v. Mendenhall*, 446 U.S. 544, 554(1980)). Other cases have relied on the rule traditionally used to determine whether a suspect is "in custody" for purposes of his Fifth Amendment *Miranda* protection. *See, e.g.*, *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 823 (6th Cir. 1999) (an arrest occurs when "a reasonable person in the suspect's position would have felt that he was under arrest or otherwise deprived of his freedom of action in any significant way") (internal citations and quotations omitted). The common thread tying all the cases together, though, is that they all depend on a fact-specific analysis of the degree of force the officers used on the occasion in question.

him, the officers placed significant restraints on Williams's freedom of movement. The officers forced Williams to exit his car, asked him to place his hands on the hood and gave him a pat-down search of his person. After Williams admitted that he did not have a driver's license, the officers handcuffed him and placed him in the back of the squad car. Second, they issued Williams his *Miranda* rights and interrogated him. Officer Gonzalez testified that soon after placing Williams in the back of the car, the officers searched his vehicle. Then Gonzalez's partner issued Williams his *Miranda* rights, obtained a written waiver of rights form, and subjected him to an interrogation regarding the ownership of the ammunition found in the vehicle. These circumstances viewed as a whole support the conclusion that the officers placed Williams under custodial arrest, notwithstanding their later decision to release him. A review of several recent cases supports this conclusion.

In *Lopez-Arias*, four Drug Enforcement Administration ("DEA") agents stopped an automobile occupied by two men suspected of possessing illegal drugs. The DEA agents brandished firearms, handcuffed the suspects, placed them into the backseats of separate DEA vehicles, transported them from the scene of the stop to an abandoned parking lot, read them their *Miranda* rights, and questioned them. *Lopez-Arias*, 344 F.3d at 626. Based on the totality of the circumstances, we held that the suspects were arrested, rather than merely detained for an investigatory stop and thus, that absent probable cause for the arrest, the arrest was unlawful. *Id.* at 628. *But see Bennett v. City of Eastpointe*, 410 F.3d 810, 837-38 (6th Cir. 2005) (detention with handcuffs in back of police cruiser taken alone does not turn a detention into an arrest). The seizure here was only slightly less intrusive than that determined to be an arrest in *Lopez-Arias*. In the

present case, the officers did not brandish weapons or seclude Williams in another location as the officers did in *Lopez-Arias*. But those facts alone do not compel this court to distinguish *Lopez-Arias*, in light of all the other evidence that an arrest occurred in this case: e.g., the officers' acts of holding Williams in the back of the squad car, handcuffing him, reading him his rights and interrogating him.

III.

It is true that officers in this case did not read Williams his *Miranda* rights or interrogate him until after they searched his person and his vehicle. Therefore, arguably the custodial arrest did not occur until after the search at issue. However, in order to be a legitimate search incident to arrest, the custodial arrest does not necessarily have to take place before the search. A warrantless search that precedes an arrest may be constitutionally valid as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed "quickly on the heels search of the challenged search." *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); *see also United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004).[5] We have looked carefully at *Rawlings* to determine whether our circumstances fall within its scope.

Here, the officers had a legitimate basis to arrest Williams before the search. Under the Fourth Amendment, an officer has the authority to make a custodial arrest where he has probable

---

[5] This rule, although arguably not the focus of the *Rawlings* Court, has been repeatedly reaffirmed in our circuit and in many others. *See, e.g.*, *Montgomery*, 377 F.3d at 586; *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997); *United States v. Donaldson*, 793 F.2d 498, 503 (2d Cir. 1986); *United States v. Miller*, 925 F.2d 695, 698 (4th Cir. 1991); *United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999); *United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002); *United States v. Riley*, 351 F.3d 1265, 1269 (D.C. Cir. 2002).

cause to believe that a misdemeanor offense has been committed in his presence. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Once the officers stopped Williams for disregarding a stop sign and Williams exited the vehicle, he immediately admitted to the officers that he did not have a driver's license and turned over his parole card for identification. Only then did the officers handcuff Williams, place him in the back of the squad car and search his vehicle. Therefore, at the time of the search, the officers had probable cause to believe that Williams was guilty of driving without a license, a misdemeanor offense under Tennessee law. See Tenn. Code Ann. § 55-50-351 (defining driving without a license as a Class C misdemeanor). Accordingly, the ammunition the officers found during the course of the search was not necessary to justify the arrest. *Cf. Smith v. Ohio*, 494 U.S. 541, 543 (1990) ("'[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification'") (quoting *Sibron v. New York*, 392 U.S. 40, 63 (1968)).

Moreover, the officers completed the arrest shortly after they conducted the search. *See Rawlings*, 448 U.S. at 111. Moments after the officers completed the search, they had handcuffed Williams, placed him in the back of the squad car, issued him *Miranda* warnings and interrogated him. As we have already explained, once the officers had taken each of these steps, they had placed Williams under "custodial arrest," under any definition of that term.

We recognize that applying the literal language of *Rawlings* to a routine traffic stop creates the risk of abuse by law enforcement officers. Arguably, under the literal language of *Rawlings*, an

officer could search a suspect's vehicle during a routine traffic stop, arrest the suspect after finding contraband, and then validate the search by testifying that he arrested the suspect for the misdemeanor traffic offense. We do not believe that to be the holding of *Rawlings*, nor the law of the Fourth Amendment. The reasonableness of a search depends on what the officers actually did, not what they had the authority to do. *See Knowles*, 525 U.S. at 114 (holding that despite an officer's statutory authority to arrest a suspect for the commission of a traffic offense, an officer may not conduct a search incident to arrest based on that authority unless he actually conducts an arrest).

Upon comparison, we conclude that our circumstances are more closely analogous to the facts in *Rawlings* than to those in *Knowles*. In *Rawlings*, before the search occurred, the police took concrete steps towards effectuating an arrest based on probable cause that a criminal offense had occurred. After entering the house, the officers had probable cause to believe that drugs were on the premises and sought a search warrant. They detained the defendant and a companion. During the course of their subsequent investigation, the police read everyone their *Miranda* rights and found illegal drugs in a purse belonging to one of the defendant's companions. The defendant admitted ownership of the drugs. Based on that admission, the police searched his person and found further incriminating evidence. Immediately thereafter, the police formally placed the defendant under arrest. In *Knowles*, on the other hand, based on probable cause that the defendant had committed a traffic offense, the police issued a traffic citation and then they conducted a search. In other words, the officers took no steps towards effectuating an arrest until after the search had concluded.

Here, as in *Rawlings*, before the search occurred, the officers took preliminary steps towards a formal arrest based upon existing probable cause. Immediately after the officers discovered that

Williams did not have a driver's license, they handcuffed him and placed him in the back of the squad car. This is significant for two reasons. First, it suggests that the arrest in this case, like the search in *Rawlings*, was the result of a fluid process that cannot easily be divided into a rigid chronological sequence. Second, it suggests that the ammunition found in the search of Williams's person or his car did not motivate the officers to make the arrest. In other words, this encounter was something more than a routine traffic stop. The Fourth Amendment does not impose such a rigid sequence that an officer in the field is required to follow. Our circumstances fit within the holding and context of *Rawlings*. Accordingly, the fact that the officers did not interrogate Williams or read him his *Miranda* rights until after they conducted the search does not render the search invalid.

IV.

We also recognize that the officers' decision to release Williams with a misdemeanor citation appears to stretch the *Belton* exception beyond its original justifications. Indeed, the *Knowles* Court noted that the search incident to arrest exception was originally justified by two concerns: "(1) the need to disarm the suspect in order to take him into custody; and (2) the need to preserve evidence for later use at trial." *Knowles*, 525 U.S. at 116. Although the *Knowles* Court recognized that there is a concern for officer safety in the case of a routine traffic stop, the Court reasoned that "[t]he threat to officer safety from issuing a traffic citation . . . is a good deal less than in the case of a custodial arrest." *Id*. at 117. Based on this language, Williams argues that the search of his person and his car was not justified because he posed little threat to Officer Gonzalez and his partner after being issued a citation.

However, there is a significant difference between *Knowles* and the present case that lessens

the theoretical concerns here.  In *Knowles*, the officers issued the defendant a citation *before* they searched the vehicle, *Knowles*, 525 U.S. at 114; and therefore, the defendant may well have been "less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence."  *Cupp v. Murphy*, 412 U.S. 291, 296 (1973) (explaining that the justifications for a search incident to arrest do not exist when a detainee is not formally arrested). Here, the officers only issued the citation *after* they had searched Williams's vehicle.  This is important because at the time the officers conducted the search, they were subject to the same "proximity, stress and uncertainty" that flow from any formal arrest.  *See Robinson*, 414 U.S. at 234 n.5 (explaining the source of concern for an officer's safety during an arrest).

In effect, Williams asks us to hold that an officer must take a detainee to the police station in order to have the authority to conduct a search.  The authorities binding us do not support such a rigid interpretation of custodial arrest.  *See Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) ("An arrested person is not invariably taken to a police station or confined; if an arrestee is taken to the police station, that is no more than a continuation of the custody inherent in the arrest status."). Indeed, Williams's approach would force this Court to adopt two definitions of the term "arrest:" one for the purposes of determining whether an officer's investigative stop requires probable cause and another for the purposes of determining when an officer has the authority to conduct a search.  In the Sixth Circuit, "arrest" is not subject to multiple definitions.  *See, e.g.*, *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997) (noting that a "seizure" for purposes of the Fourth Amendment comprises either a Terry investigative detention requiring "reasonable, articulable suspicion of criminal activity" or an arrest requiring probable cause); *see also Dunaway*

*v. New York*, 442 U.S. 200, 213-14 (1979) (in the law of arrest, "[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront").

On the contrary, where based upon probable cause, officers handcuff a detainee, put him in the back of the squad car, issue him *Miranda* warnings and subject him to an interrogation, there is sufficient evidence to find that a custodial arrest has occurred despite the fact that those same officers ultimately decide to release him. Because we find that the officers conducted a lawful custodial arrest in this case, the officers had the constitutional authority to search Williams's person and his vehicle at that time. *See Belton*, 453 U.S. at 460.

The judgment of the district court is AFFIRMED.

**R. GUY COLE, JR., Circuit Judge, dissenting.**

Because I believe that Williams was searched in violation of the Fourth Amendment without having been arrested, I respectfully dissent.

**I.**

As this Court has previously held, "the search-incident-to-a-lawful-arrest rule also permits an officer to conduct a full search of an arrestee's person before he is placed under lawful custodial arrest as long as 'the formal arrest follows quickly on the heels of the challenged search of . . . [his person]' *and the fruits of that search are not necessary to sustain probable cause to arrest him.*" *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 110–11 n.6 (1980)) (emphasis added)). In this case, probable cause to arrest Williams did not exist until the police found the contraband.

The majority's reliance on *Rawlings*, for the proposition that the search incident to arrest exception to the warrant requirement is met "where the formal arrest follow[s] quickly on the heels of the challenged search of petitioner's person," *Rawlings*, 448 U.S. at 111, is misplaced. In *Rawlings*, the police, after obtaining a search warrant for the premises in which the defendant was located, read the defendant and his companion their rights under *Miranda*. *Id*. at 100. After the defendant received his *Miranda* warning, the police asked his companion to empty her purse. *Id*. at 101. The defendant claimed ownership of contraband located in his companion's purse. *Id*. It was only after the defendant admitted to possessing contraband, thereby creating probable cause to arrest him, that the police searched him. *Id*. Finally, after searching the defendant, the

police formally arrested him. *Id.* The rationale behind the *Rawlings* decision is that, once the defendant admitted to possession of the contraband in his companion's purse, "the police clearly had probable cause to place petitioner under arrest." *Id.* at 111 Therefore, the Court concluded, because "the formal arrest followed quickly on the heels of the challenged search," the challenged search was permissible. *Id.*

Under the majority's reading of *Rawlings*, any time a police officer effectuated a warrantless search, found contraband, and then formally arrested the searched person "on the heels" of the search, the search would be proper and the evidence admissible. Such a reading would eviscerate the Fourth Amendment. The key in *Rawlings* is that the police had probable cause to arrest the defendant before they searched him. If they had done so, the search would have been incident to an arrest and proper. The Supreme Court was merely extending the search-incident exception to the warrant requirement to cases where the police had probable cause to arrest and merely searched the defendant before formalizing the arrest.

In the case before us, the police did not have probable cause to arrest Williams before they found the ammunition. As the majority acknowledges, it was only after the police found the ammunition that the police took most of the steps which could be considered to be an arrest.

**II.**

In federal prosecutions, we look to federal constitutional law to determine whether an arrest occurred. *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994). Therefore, "the appropriate inquiry for a federal court considering a motion to suppress evidence seized by state police officers is whether the arrest, search, or seizure violated the Fourth Amendment." *Id.*

Federal law in this circuit is clear in that it allows police officers to detain someone in the back of a cruiser without that detention becoming an arrest. *See Bennett v. City of Eastpointe*, 410 F.3d 810, 837–38 (6th Cir. 2005) (placing a handcuffed detainee into the back of a police cruiser does not turn detention into arrest); *United States v. Bradshaw*, 102 F.3d 204, 211–12 (6th Cir. 1996) ("Detention in a police car does not automatically constitute an arrest. . . . [A] motorist [cannot] be lawfully detained in a police car once the purposes of the initial traffic stop were completed." (citations omitted)). *See also Michigan v. Summers*, 452 U.S. 692 (1981) (detention is different than arrest); *Muehler v. Mena*, --- U.S. --- 125 S. Ct. 1465 (2005) (in holding that a detention incident to a lawful search is permissible, Court found that a handcuffed woman was not arrested during a search pursuant to a warrant, but was merely reasonably detained).

In *Bradshaw*, the police officers detained the defendant in the back of their cruiser during a routine traffic stop. *Bradshaw*, 102 F.3d at 211. So long as the detention did not exceed "the purpose and objective of the stop," *id*. at 212, the officers could lawfully detain the defendant. *Id*. at 211. While detaining Bradshaw, the officers discovered a handgun and marijuana in plain view in Bradshaw's car. *Id*. This Court determined that the detention did not amount to an arrest, but *because the contraband was in plain view*, the search was permissible. *Id*. at 212.

For purposes of federal constitutional law, Williams was detained incident to a lawful traffic stop. The police stated that they stopped Williams's vehicle because it generally matched the description of an automobile that had been reported stolen and that they observed Williams "disregard" a stop sign. The purpose and objective of the stop was first, to determine if the

vehicle was the one reported stolen, which could be done without a search, and, second, to issue a citation for a moving violation. In fact, the only course of punitive action the police took was to issue Williams a citation and let him go. When Williams was handcuffed and placed in the cruiser, it was concurrent with the purpose of the stop. The police did not have probable cause to arrest Williams at that time nor did the actions they took constitute an arrest. Because Williams was not arrested, the police exceeded their authority when they searched Williams's car and the fruits of that unconstitutional search should be suppressed.

This was not a search incident to a lawful arrest because Williams was never arrested. It was a search incident to a detention. *See Thornton v. United States*, 541 U.S. 615, 621 (2004) (Consistent with the Fourth Amendment, "[a]n officer may search a suspect's vehicle. . . only if the suspect is arrested.").

As the majority correctly states, the totality of the circumstances determines whether a person is arrested, including whether the detainee is transported to another location, whether there were significant restraints on the freedom of movement of the detainee, whether weapons or bodily force were used, and whether *Miranda* warnings were issued. (Maj Op. 5 (citing *United States v. Lopez-Arias*, 344 F.3d 623, 627–28 (6th Cir. 2003))). In Williams's case, he was not transported anywhere, weapons or other force were not used on him, and he was not *Mirandized* or interrogated until after the ammunition was found. The majority believes that this is factually similar to *Lopez-Arias* in which firearms were brandished by federal officers, the suspects were transported to another location, and they were *Mirandized* prior to questioning. I find this comparison unpersuasive.

Further, the officers issued Williams a citation and let him drive away. Therefore, *Knowles v. Iowa*, 525 U.S. 113 (1998), is applicable and controlling. In *Knowles*, the Court refused to extend the rule allowing searches incident to lawful arrests to searches incident to citation. *Id*. at 118–19. Therefore, unless the search of Williams was in some other way reasonable, the evidence seized must be suppressed.

The burden of proof as to whether a warrantless search is proper is on the government. *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002). In the instant case, although it is possible that a pat-down of Williams was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968), the officers did not remember if they found the ammunition on Williams's person or in his car. As Williams was merely detained pursuant to a traffic stop, and there is no "search incident to a lawful detention" exception to the Fourth Amendment, the only way the ammunition is admissible is if it was in plain view. If the evidence was found during an actual search of the vehicle, then, because Williams was not arrested for purposes of federal law, it is not admissible. There is no evidence that the ammunition was in plain sight in the car, merely that the ammunition was either in the front of the car or on his person. Therefore, the government cannot meet its burden that the search was proper.

I would **REVERSE** the district court's denial of Williams's motion to suppress evidence.