DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Bryan Snyder, appeals from the judgment of the Medina County Court of Common Pleas convicting him of one count of robbery. We affirm.
 I. {¶ 2} Early in the afternoon of June 3, 2005, Deputy Dan Kohler of the Medina County Sheriff's Department heard a radio call to another officer regarding a fight at an outlet mall near the intersection of Interstate 71 and State Route 83 in Medina County. A few minutes later, Kohler, an officer with ten years experience, received another dispatch indicating that the disturbance was possibly a robbery of an armored Brink's truck. Further dispatches by radio and on the computer display in Kohler's cruiser showed that the suspects were two tall, thin white males, possibly in a white car, one of whom was wearing a dark baseball cap. One suspect was wearing a dark sweater or sweatshirt and the other wore a light colored shirt. Knowing that the Interstate highway was a common escape route for perpetrators of crimes at the outlet mall, Kohler positioned himself in the parking lot of a truck stop on Route 83 between the mall exit and the entrance ramps to the Interstate. He noticed that two other law enforcement officers were making traffic stops and had stopped a white car carrying two men who matched the description of the suspects, although it was later determined that the occupants of that car were not the suspects.
 {¶ 3} Kohler observed a white Oldsmobile with two white males inside coming from the direction of the outlet mall and traveling toward the Interstate on Route 83. He could see that the driver was wearing a dark shirt and the passenger was wearing a white t-shirt. Kohler noticed that the vast majority of passersby were looking at his cruiser and most passing motorists, assuming that Kohler was about to exit the parking lot, paused and motioned for him to proceed. The occupants of the Oldsmobile, on the other hand, avoided looking at the cruiser and appeared to be nervous as they drove past. Kohler followed the Oldsmobile and requested a check on the license plate, from which he learned that the car was registered to a female with an expired driver's license. Kohler initiated a traffic stop on the northbound entrance ramp to the Interstate, at which time he learned from a dispatch that one of the suspects was wearing dark cargo pants and was seen removing a Brink's uniform shirt or sweater at the crime scene. Kohler asked the driver, Travis Grant, to step out of the car, explaining that he was investigating a robbery at the outlet mall. Grant responded that he had just come from the mall. While patting Grant down to check for possible weapons, Kohler discovered a folded plastic bag in Grant's pocket, which Kohler believed could have been used to carry stolen money. Kohler noticed that Appellant, who used the pseudonym Shane Grant, was wearing dark cargo pants. Kohler also observed two dark-colored baseball caps in the back seat and another baseball cap in the front seat.
 {¶ 4} Several other officers arrived while Kohler was speaking with Appellant and Grant. Kohler handcuffed Grant, asked Appellant to step out of the car, and handcuffed him as well. Kohler removed the keys from the car's ignition and began to search the vehicle while other officers stood around Grant and Appellant. Kohler found a crowbar under the front seat, then opened the trunk and found several Brink's uniform shirts and a duty belt with no gun. Grant and Appellant were advised of theirMiranda rights and taken back to the mall for identification. Appellant was later indicted on a single count of robbery, a felony of the second degree, pursuant to R.C. 2911.02(A)(2).
 {¶ 5} Appellant filed a motion to suppress, claiming that Kohler did not have an articulable suspicion of criminal activity sufficient to justify the stop; that Appellant and Grant were arrested without probable cause; and that because the arrest was unlawful, the search of the vehicle was a search incident to an unlawful arrest and therefore unlawful in itself. Following an evidentiary hearing, the trial judge denied the motion, finding that an articulable suspicion of criminal activity existed to justify the stop; that Grant and Appellant were not placed under arrest until after the car was searched; that probable cause existed to justify the search; and that after the car was searched, probable cause existed to justify the arrest.
 {¶ 6} Appellant changed his plea to no contest and was sentenced to five years in prison, with credit for 204 days already served. Appellant timely filed this appeal, asserting one assignment of error for our review.
 II. Assignment of Error "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS WHERE THE STOP OF THE CAR WAS NOT BASED UPON AN ARTICULABLE SUSPICION THAT THE OCCUPANTS OF THE VEHICLE WERE ENGAGED IN CRIMINAL ACTIVITY."
 {¶ 7} Although the language of Appellant's sole assignment of error appears to address only the validity of the stop, Appellant's argument also touches upon the validity of the arrest. We will therefore consider both arguments.
A. Articulable suspicion for the stop.
 {¶ 8} In order to stop and detain a suspect for investigation, a police officer must have a reasonable suspicion that criminal activity has occurred or is about to occur, based on specific and articulable facts. Terry v. Ohio (1968), 392 U.S. 1, 21. The detention or stop may not be based merely on "inarticulate hunches." Id. at 22. However, "there is `no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'" Id. at 21, quoting Camara v. MunicipalCourt (1967), 387 U.S. 523, 536-537.
 {¶ 9} Appellant argues that the stop was based on nothing more than a hunch. Kohler was able to articulate a number of facts, however, that would suffice to create a reasonable suspicion that the occupants of the car had been involved in criminal activity. The car was a white car, and reports indicated that the robbery suspects were possibly escaping in a white car. Kohler, a highly experienced law enforcement officer, testified that he was able to discern that Appellant and Grant looked nervous as they drove past. A license plate check revealed that the Oldsmobile was registered to a female with an expired driver's license and clearly not to the male occupants. The two men matched the descriptions of the suspects; Grant was wearing a dark colored shirt, as was one of the suspects seen at the crime scene, and Appellant was wearing a light colored shirt.
 {¶ 10} Appellant further contends that Appellee has failed to prove that the dispatches on which Kohler relied were based on reliable information. Where a police officer, in effecting a stop, relies entirely on a dispatch derived from an informant's tip, it must be shown at the suppression hearing that the facts leading to the dispatch — specifically, the tip — contain "`sufficient indicia of reliability to justify the investigative stop.'" State v. Catanzarite, 9th Dist. No. 22212, 2005-Ohio-260, at ¶ 12, quoting Maumee v. Weisner (1999),87 Ohio St.3d 295, 299. Among the most important factors for determining the reliability of a tip are the veracity of the informant, the reliability of the informant, and the basis of the informant's knowledge.Catanzarite at ¶ 12. It has been held that a tip from an identified citizen informant who is a victim or a witness is presumed to be reliable, "particularly if the [informant] relates his or her basis of knowledge." (Internal quotations omitted.) Maumee, 87 Ohio St.3d at 301, quoting Centerville v. Gress (June 19, 1998), 2d Dist. No. 16899, at *2. Even if the informant does not identify himself, however, a report from an ordinary citizen can justify a stop. Maumee, 87 Ohio St.3d at 300, quoting State v. Carstensen (Dec. 18, 1991), 2d Dist. No. 91-CA-13, at *2.
 {¶ 11} Although an audiotape of radio transmissions between Kohler and his dispatcher was played at the suppression hearing, the transcript does not include the content of the tape and this Court has not been provided with a copy of the tape. Thus, we are unable to determine what indicia of reliability, if any, the tape might have revealed. Where the record is incomplete, we must presume the regularity of the proceedings and conclude that sufficient evidence was presented to justify the trial court's findings. Helms v. Helms, 9th Dist. No. 20765, 2002-Ohio-3190, at ¶ 11. We must therefore conclude that sufficient evidence existed to support a finding that the information available to the dispatcher was reliable, and that this information, taken with Kohler's observations, raised a reasonable suspicion that Grant and Appellant may have been connected with the crime.
B. Probable cause, search, and arrest.
 {¶ 12} Where an officer has probable cause to believe that there is contraband in a car that has been stopped, the officer may conduct a warrantless search of the vehicle. Michigan v. Thomas (1982),458 U.S. 259, 261. Although an officer is normally permitted to conduct a warrantless search only in exigent circumstances, a warrantless search of a stopped vehicle is permissible, so long as probable cause exists, because a vehicle is mobile and thus could be easily moved while officers attempt to procure a search warrant. Chambers v. Maroney
(1970), 399 U.S. 42, 51. Such a search may extend to the entire car, including the trunk. State v. Biehl, 9th Dist. No. 22054,2004-Ohio-6532, at ¶ 27, citing United States v. Ross (1982),456 U.S. 798, 824. Probable cause for a search exists where, based on the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place."State v. Steen, 9th Dist. No. 21871, 2004-Ohio-2369, at ¶ 5, quotingIllinois v. Gates (1983), 462 U.S. 213, 238. Probable cause for an arrest exists where at the moment of the arrest, from the information known to the arresting officers based on reasonably trustworthy information, a reasonably prudent person would be warranted in believing that the arrestee had committed or was committing an offense. Beck v.Ohio (1964), 379 U.S. 89, 91.
 {¶ 13} A seizure occurs when an individual is detained under circumstances in which a reasonable person would not feel free to leave the scene; both an investigatory stop and an arrest thus constitute "seizures" within the meaning of the Fourth Amendment. United States v.Montgomery (C.A.6, 2004), 377 F.3d 582, 587-88. In order to be termed an investigatory stop, the seizure must be temporary, lasting no longer than needed to effectuate the purpose of the stop, and the investigation must be conducted by the least intrusive means possible to allow the officer to verify or dispel the officer's suspicion in a short period of time. Florida v. Royer (1983), 460 U.S. 491, 500. If the detention exceeds the bounds of an investigatory stop, it may be tantamount to an arrest. See id. at 496. The act of handcuffing a suspect does not inherently turn an investigatory stop into an arrest, particularly where such restraint is necessary for the safety of the suspect or the investigating officers. State v. Mills, 9th Dist. Nos. 02CA0037-M, 02CA0038-M, 2002-Ohio-7323, at ¶ 11; Montgomery, 377 F.3d at 588, citingHouston v. Clark Cty. Sheriff Deputy John Does 1-5 (C.A.6, 1999),174 F.3d 809, 814-15. In the present case, Kohler testified that he handcuffed Appellant mostly for Kohler's own safety. The transcript thus supports the trial court's finding that handcuffing Appellant amounted to a reasonable, temporary restraint on his liberty in the context of a mere investigatory stop and did not rise to the level of an arrest until the Miranda warnings were given, at the earliest, after Kohler had already searched the trunk of the car.
 {¶ 14} We must therefore determine, first, whether the search of the vehicle was supported by probable cause. If the search was supported by probable cause, our second question, whether probable cause existed for the arrest, must take into account the evidence obtained during the lawful search, because the arrest occurred after the search.
 {¶ 15} According to Kohler's testimony, when he stopped Grant and Appellant, he observed that their physical descriptions and the description of their car were consistent with the descriptions that he received on his radio and his computer display. They appeared nervous and avoided looking in Kohler's direction, unlike most other passersby. After the stop was initiated, Kohler received information that one of the suspects wore dark cargo pants and was seen removing a Brink's uniform shirt as he fled from the crime scene. He noticed that Appellant wore dark cargo pants, and his white t-shirt, according to Kohler's testimony, was consistent with an undershirt, meaning that it could have been worn under the Brink's uniform. Grant's clothing matched the description of the other suspect's clothing, and there were baseball caps plainly visible in the car, consistent with the caps that the suspects had been wearing. When Kohler conducted a pat-down for weapons, he discovered a folded plastic bag on Grant's person, which Kohler believed could have been intended to carry stolen money. In light of these facts, Kohler could reasonably have found a fair probability that evidence of the robbery would be found upon further inspection of the vehicle. The trial court therefore did not err in determining that the search of the vehicle was supported by probable cause.
 {¶ 16} During the course of the lawful search of the vehicle, Kohler discovered several Brink's uniforms in the trunk, along with a duty belt. Particularly in light of the dispatches that Kohler had previously received indicating that one of the suspects wore a Brink's uniform when committing the crime, this discovery would clearly have led a reasonably prudent person to believe that Grant and Appellant had committed the robbery. Thus, probable cause existed at the time of the arrest, subsequent to the search of the trunk.
 {¶ 17} The trial court therefore did not err in determining that the search of the vehicle was supported by probable cause and that the arrest, which occurred after the search of the trunk, was also supported by probable cause. Appellant's sole assignment of error is overruled as to both the issue of reasonable suspicion and the issue of probable cause.
 III. {¶ 18} Appellant's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
WHITMORE, P. J., MOORE, J., CONCUR