DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Robert H. Willard, has appealed from an order of the Medina Municipal Court denying his administrative license suspension appeal. Appellant has also appealed from his conviction in the Medina Municipal Court of operating a vehicle under the influence of alcohol in violation of R.C. 4511.19. We affirm.
 I. {¶ 2} On May 23, 2003, Appellant was stopped at a sobriety checkpoint established at the intersection of State Route 18 and River Styx Road in Montville Township. Officer Terry Grice of the Montville Township Police Department and Deputy James Harhay of the Medina County Sheriff's Office further detained Appellant as a result of observations they made during the initial stop. After administering several field sobriety tests, Deputy Harhay arrested Appellant and had him transported to the Medina County Sheriff's Office.
 {¶ 3} At the sheriff's office, Appellant refused to submit to a breathalyzer test. On the basis of this refusal, officers confiscated Appellant's license and imposed a one-year administrative license suspension ("ALS"). Appellant was charged with operating a vehicle while under the influence of alcohol ("OMVI") in violation of R.C. 4511.19(A)(1), and was summoned to appear for his arraignment at the Medina Municipal Court on June 4, 2003.
 {¶ 4} On May 30, 2003, Appellant requested an appeal of the ALS. At his June 4 arraignment, Appellant made an oral motion for termination of the ALS. Appellant argued that the ALS was improper because he was not brought before the court for arraignment within five business days of his arrest, contrary to the time limit provided by R.C. 4511.191(D)(2). The magistrate denied Appellant's motion to terminate the ALS and his appeal of the ALS. Appellant filed objections to the magistrate's decision. The trial court overruled those objections and adopted the magistrate's ruling on February 19, 2004.
 {¶ 5} Appellant also challenged the constitutionality of the sobriety checkpoint and his arrest, filing a motion to suppress on June 23, 2003. Following a hearing on the matter, the trial court denied Appellant's motion to suppress.
 {¶ 6} Appellant entered a plea of no contest on April 12, 2004. The trial court issued its final judgment on the OMVI charge on May 28, 2004. The court fined Appellant $700, suspended Appellant's license for one year from May 23, 2003, and sentenced Appellant to 90 days in jail with 80 days suspended, and one year of probation. This appeal followed.
 II. Administrative License Suspension Assignment of Error No. 1
"The court erred in failing to terminate the administrative license suspension."
 {¶ 7} In his first assignment of error, Appellant contends that the trial court erred by declining to terminate the administrative license suspension. We do not have jurisdiction to hear the issues raised in this assignment of error, and therefore do not address it.
 {¶ 8} An administrative license suspension and a criminal prosecution for operating a vehicle under the influence which arise from the same arrest are separate proceedings. Hoban v. Rice (1971), 25 Ohio St.2d 111, paragraph one of the syllabus; see, State v. Gustafson (1996),76 Ohio St.3d 425, paragraph two of the syllabus. A trial court's disposition of an ALS appeal is a final appealable order. State v.Williams (1996), 76 Ohio St.3d 290, paragraph two of the syllabus. Therefore, under App.R. 4(A), Appellant was required to file a notice of appeal of the denial of his ALS appeal within thirty days of the trial court's judgment.
 {¶ 9} The trial court issued its final judgment on the ALS matter on February 19, 2004. Appellant did not file a notice of appeal with this Court until June 4, 2004, well after the thirty-day deadline had expired. Therefore, this Court does not have jurisdiction to hear any issue regarding the trial court's disposition of Appellant's ALS appeal, and we do not address Appellant's first assignment of error.
 OMVI Conviction {¶ 10} In his remaining two assignments of error, Appellant appeals from his conviction for OMVI, challenging the trial court's denial of his motion to suppress evidence seized as a result of his detention at the checkpoint and his subsequent arrest. The trial court entered judgment on the criminal prosecution against Appellant on May 28, 2004. Therefore, Appellant's appeal of the issues raised in his remaining assignments of error is timely.
 {¶ 11} As an initial matter, we note the applicable standard of review. A trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact to the reviewing court. State v. Long
(1998), 127 Ohio App.3d 328, 332. "An appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998), 127 Ohio App.3d 414,416, citing Ornelas v. United States (1996), 517 U.S. 690, 699
(Emphasis sic).
 {¶ 12} At the hearing on the motion to suppress, the State offered the testimony of Deputy Harhay, Officer Grice, and Sergeant Gary Hubbard of the Medina County Sheriff's Department. The officers provided the following account of the events leading up to Appellant's arrest.
 {¶ 13} The checkpoint was established at the intersection of State Route 18 and River Styx Road in Montville Township. It ran from about 7:00 p.m. until 12:00 a.m. The site of the checkpoint was selected based on its heavy traffic flow, high number of DUI arrests, and because it was adjacent to a large parking lot which provided a safe space to which the officers could divert selected vehicles. A drawing included in State's Exhibit 1 indicates that a sign for the checkpoint was placed ahead of the initial contact point.
 {¶ 14} The Montville Police Department prepared a media release giving notice of the time and place of the checkpoint, and it was sent, at the least, to the Medina County Gazette. The State offered into evidence a photocopy of what appears to be a newspaper article published the day the checkpoint was held, announcing the location of the checkpoint and advising that it would be in place from 8:00 p.m. until 10:00 p.m. that night. The photocopy does not reveal the identity of the publication the article appeared in.
 {¶ 15} The officers determined, in advance, that they would flag in every tenth vehicle. The officers decreased the interval to every fifth vehicle and then to every third vehicle in response to a light flow of traffic. At the time Appellant was flagged in, the officers were flagging in every third vehicle.
 {¶ 16} Officer Hubbard flagged Appellant into the checkpoint, as his was the third vehicle in line, and directed him to proceed to the parking lot. Deputy Harhay observed Appellant's vehicle brush against the curb as it pulled into the lot. Officer Grice approached Appellant and smelled an obvious odor of an alcoholic beverage. Appellant admitted to Officer Grice that he had consumed some alcoholic drinks earlier in the evening. Deputy Harhay heard this admission. Deputy Harhay also observed the odor of alcohol, and further observed that Appellant's eyes were glassy and bloodshot. After speaking with Appellant, the officers decided to administer a portable breathalyzer test. Appellant submitted to the test, but the equipment did not register a reading after two attempts. Officer Grice then asked Appellant to step out of his vehicle so that the officers could administer field sobriety tests.
 {¶ 17} Deputy Harhay administered the horizontal gaze nystagmus test, the one-legged stand test, and the walk and turn test. Deputy Harhay then arrested Appellant for operating a motor vehicle while under the influence of alcohol.
 Assignment of Error No. 2
"The trial court erred in overruling defendant's motion to suppress."
 {¶ 18} In his second assignment of error, Appellant maintains that the trial court erred by finding that the sobriety checkpoint pursuant to which he was initially stopped did not offend the search and seizure provisions of the Ohio and United States Constitutions. We disagree.
 {¶ 19} The stop of a vehicle at a highway checkpoint is a "seizure" within the meaning of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution. State v. Orr
(2001), 91 Ohio St.3d 389, 391. In order to determine whether such a seizure is reasonable, and thus permissible under the Ohio and United States Constitutions, courts consider the following three factors: "(1) the particular checkpoint's intrusion on privacy, (2) the state's interest in maintaining the checkpoint, and (3) the extent to which the checkpoint advances the state interest." Id. at 392, citing MichiganDept. of State Police v. Sitz (1990), 496 U.S. 444.
 {¶ 20} We find that, in light of these three factors, the checkpoint pursuant to which Appellant was stopped was established and operated in compliance with both the Ohio and the United States Constitutions.
 {¶ 21} First, we find that the checkpoint imposed only a slight intrusion on the privacy of the stopped motorists. Motorists were warned of the checkpoint by a sign placed ahead of it. The layout of the checkpoint, as illustrated by the diagram in State's Exhibit 1, permitted the motorists to observe that other vehicles were being stopped. The checkpoint was operated by uniformed police officers who initiated brief stops according to predetermined patterns that varied only with the flow of the traffic. These features of the checkpoint served to ameliorate the "fear and surprise engendered in law abiding motorists" stopped by the checkpoint, reducing the intrusiveness of the checkpoint to a permissible level. Sitz, 496 U.S. at 452-453; United States v. Martinez-Fuerte
(1976), 428 U.S. 543, 558.
 {¶ 22} The State's interest in maintaining the checkpoint, as expressed in the published notice warning of the checkpoint, was the deterrence and interception of impaired drivers. It is beyond "seriou[s] dispute" that the State has an interest in eradicating alcohol and drug-impaired driving. Sitz, 496 U.S. at 451.
 {¶ 23} Finally, we find that the checkpoint effectively furthered the State's interest in deterring and intercepting drunk drivers. The site of the checkpoint was selected in part because of a high number of DUI arrests in that area. Additionally, the evidence presented at the hearing on Appellant's motion to suppress established that advance notice of the checkpoint was printed in at least one publication. The advance publicity of the checkpoint served to deter drunk drivers, and the selection of a site known for its high incidence of drunk driving served to increase the likelihood of intercepting the undeterred, thus effectively furthering the State's interest in establishing the checkpoint.
 {¶ 24} Appellant's second assignment of error is overruled.
 Assignment of Error No. 3
"The state failed to establish probable cause to detain defendant beyond the initial checkpoint or to arrest defendant."
 {¶ 25} In his third assignment of error, Appellant maintains that the trial court erred by determining that the police had probable cause to arrest him. We disagree.
 {¶ 26} Probable cause to arrest a person for driving under the influence exists if "at the moment of arrest, the police had * * * information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Homan (2000),89 Ohio St.3d 421, 427, citing Beck v. Ohio (1964), 379 U.S. 89, 91. When determining whether police had probable cause to make an arrest, courts must consider the totality of the circumstances surrounding the arrest.Homan, 89 Ohio St.3d at 427, citing State v. Miller (1997),117 Ohio App.3d 750, 761.
 {¶ 27} Appellant maintains that the results of the field sobriety tests may not be used as evidence of probable cause, because they were not administered with the requisite level of compliance with standardized testing procedures. However, probable cause to arrest for driving under the influence need not be based, in whole or in part, on the suspect's performance on field sobriety tests. Homan at 427. Because factors independent of the field sobriety tests administered by Officer Grice and Deputy Harhay established probable cause to arrest Appellant, we need not address the field sobriety tests.
 {¶ 28} In Homan, the Supreme Court of Ohio held that the arresting officer's consideration of the following combination of factors "amply support[ed]" probable cause to arrest for driving under the influence: (1) erratic driving; (2) red and glassy eyes; (3) an odor of alcohol; and (4) an admission of consuming alcoholic beverages. 89 Ohio St.3d at 427. Accord Akron v. Smith, 9th Dist. No. 21519, 2003-Ohio-5773; State v.Heard (Aug. 15, 2001), 9th Dist. No. 20445.
 {¶ 29} The very same four-factor combination underlies Appellant's arrest. Deputy Harhay witnessed Appellant driving erratically, observing him brush against the curb on his way into the parking lot. Deputy Harhay also observed that Appellant's eyes were glossy and bloodshot. Both Deputy Harhay and Officer Grice noticed an obvious odor of alcohol when they approached Appellant. Finally, both officers heard Appellant admit that he had consumed several alcoholic beverages earlier in the evening. After reviewing the totality of the facts and circumstances surrounding Appellant's arrest, we conclude that the above observations made by Deputy Harhay and Officer Grice were sufficient to establish probable cause to arrest Appellant for driving under the influence of alcohol. Appellant's third assignment of error is overruled.
 III. {¶ 30} We lack jurisdiction to hear the arguments raised by Appellant's first assignment of error, and therefore decline to address it. Appellant's second and third assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Batchelder, J., concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)