DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Juan Perez, appeals the judgment of the Summit County Court of Common Pleas denying his motion to suppress. This Court reverses.
 I. {¶ 2} On October 30, 2005, Appellant was arrested at the scene of an automobile accident on Route 77 North. Wilfredo Cruz-Batista, a passenger in the automobile operated by Appellant, died as a result of the accident. Appellant was transferred to Akron City Hospital. Once there, blood was drawn as part of the investigation. The tests revealed that Appellant had a blood alcohol content greater than the legal limit. *Page 2 
 {¶ 3} On November 9, 2005, Appellant was indicted on one count of aggravated vehicular homicide, in violation of R.C. 2903.06; two counts of operating under the influence ("OUI"), in violation of R.C. 4511.19; and one count of failure to control, in violation of R.C. 4511.202. The aggravated vehicular homicide charge was premised on an OUI violation. Appellant pled not guilty to the charges. Appellant timely filed a motion to suppress on December 20, 2005. In his motion, Appellant argued that his arrest and all evidence flowing therefrom, including blood samples, should be suppressed because the State failed to comply with R.C. 4511.19[1] or the Ohio Department of Health regulations in drawing these blood samples or in conducting tests on these samples.
 {¶ 4} On February 9, 2006, the State filed its notice of intent to use the forensic laboratory report which included results from Appellant's blood draw. The notice was accompanied by the affidavit of Nickolas O'Donnell, the laboratory director at Akron City Hospital. The affidavit indicated, in part, that M. Hershey performed the test and that "M. Hershey has been qualified by the Ohio Department of Health as a Laboratory Technician." O'Donnell also authenticated the laboratory report and attested to the chain of custody of the sample.
 {¶ 5} The trial court held hearings on Appellant's motion on February 14 and February 22, 2006. At the first suppression hearing, the prosecutor stated that *Page 3 
the affidavit had been filed and that medical personnel could be present at a later hearing. Appellant asserted that he wanted to question medical personnel regarding the blood draw. The trial court ordered the prosecutor to present those individuals at the next hearing. At the next hearing, which was a continuation of the suppression hearing, the State objected to the motion to suppress, asserting that it lacked specificity. The State requested that the motion to suppress be "dismissed]". The State also informed the court that it was relying on O'Donnell's affidavit and other documents attached thereto in order to present a prima facie case. The State presented no medical personnel, or anyone else to testify regarding the length of time between the accident and the blood draw. The State acknowledged that it was unable to produce live witnesses due to scheduling problems. Appellant objected. The State further acknowledged that it has the burden to demonstrate that all testing was performed in compliance with the Ohio Administrative Code. The State asserted that, once it sets forth the prima facie case of compliance, Appellant then has the burden to demonstrate that the State or hospital is not in compliance with "any specific part of the Ohio Administrative Code[.]" The State then informed the trial court that the sample still existed and could be tested by Appellant.
 {¶ 6} The trial court found that the State presented a prima facie case of regularity on the blood draw. Accordingly, on February 22, 2006, the trial court *Page 4 
entered an order denying Appellant's motion to suppress. On April 21, 2006, Appellant withdrew his not guilty plea and entered a plea of no contest. The trial court convicted Appellant on all counts. The court sentenced Appellant to two years incarceration on the aggravated vehicular homicide count to run concurrently with a sentence of six months incarceration on one of the OUI counts. Appellant was additionally fined $100 on the failure to control count. The trial court did not pronounce sentence on the remaining OUI count.
 {¶ 7} On appeal, this Court held that there was no final order and dismissed the appeal. Upon re-sentencing, Appellant was sentenced to two years incarceration on the aggravated vehicular homicide count to run concurrently with a sentence of six months incarceration on the other OUI count. Appellant timely appealed from his re-sentencing, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO MEET ITS BURDEN DEMONSTRATING SUBSTANTIAL COMPLIANCE WITH THE OHIO DEPARTMENT OF HEALTH REGULATIONS[.]"
 {¶ 8} In his sole assignment of error, Appellant contends that the trial court erred in denying his motion to suppress because the State failed to meet its burden demonstrating substantial compliance with the Ohio Department of Heath Regulations. We agree. *Page 5 
 {¶ 9} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact.State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416. (Italics sic). Consequently, we review the trial court's compliance with Ohio Department of Health Regulations under a de novo standard of review. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8.
 {¶ 10} At the outset, we note that the State concedes that the trial court erred in denying the motion to suppress because the affidavit and related documents do not comply with R.C. 4511.19. Appellant was convicted of aggravated vehicular homicide, in violation of R.C.2903.06(A)(1), which was premised on his operation of a vehicle under the influence, in violation of R.C. 4511.19(A)(1)(a). R.C. 2903.06 sets forth the law regarding aggravated vehicular homicide, and provides, in part:
 "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or *Page 6 
aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
 "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code[.]"
 {¶ 11} R.C. 4511.19 proscribes driving while under the influence of alcohol or drugs. R.C. 4511.19 provides, in part:
 "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 12} If a defendant challenges the admissibility of blood-alcohol test results in an "aggravated-vehicular-homicide prosecution that depends upon proof of an R.C. 4511.19(A) violation, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible." State v.Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, at paragraph one of the syllabus. The Ohio Supreme Court further held that the State must demonstrate substantial compliance "even if the test was conducted in an accredited hospital laboratory." Id. at ¶ 3. The Supreme Court has characterized errors that are excusable under the substantial-compliance standard as "`minor procedural deviations.'" Burnside, supra, at ¶ 34 (holding that the state did not substantially comply with the alcohol-testing regulations when it failed to establish its use of a solid anticoagulant as provided under Ohio Adm. Code Chapter 3701-53-05(C)), quoting State v. Homan (2000), 89 Ohio St.3d 421, 426. *Page 7 
 {¶ 13} In order for the blood-alcohol test results to be admissible, the State was required to demonstrate that the blood was drawn and tested in accordance with R.C. 4511.19(D)(1). The version of R.C.4511.19(D)(1) in effect at the time this case commenced provided:
 "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation.
 "When a person submits to a blood test at the request of a law enforcement officer under section 4511.191 of the Revised Code, only a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content of the whole blood, blood serum, or blood plasma. This limitation does not apply to the taking of breath or urine specimens. A person authorized to withdraw blood under this division may refuse to withdraw blood under this division, if in that person's opinion, the physical welfare of the person would be endangered by the withdrawing of blood.
 "The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."
Further, former R.C. 4511.19(E)(1), stated, in part that
 "Subject to division (E)(3) of this section, in any criminal prosecution * * * for a violation of division (A) (1)(b), (c), (d), (e), (f), (g), (h), or (i) or (B)(1), (2), (3), or (4) of this section * * *, a laboratory report from any forensic laboratory certified by the department of health that contains an analysis of the whole blood, blood serum or plasma, breath, urine, or other bodily substance *Page 8 
tested and that contains all of the information specified in this division shall be admitted as prima-facie evidence of the information and statements that the report contains. The laboratory report shall contain all of the following:
 "(a) The signature, under oath, of any person who performed the analysis;
 "(b) Any findings as to the identity and quantity of alcohol, a drug of abuse, or a combination of them that was found;
 "(c) A copy of a notarized statement by the laboratory director or a designee of the director that contains the name of each certified analyst or test performer involved with the report, the analyst's or test performer's employment relationship with the laboratory that issued the report, and a notation that performing an analysis of the type involved is part of the analyst's or test performer's regular duties;
 "(d) An outline of the analyst's or test performer's education, training, and experience in performing the type of analysis involved and a certification that the laboratory satisfies appropriate quality control standards in general and, in this particular analysis, under rules of the department of health.
 "(3) A report of the type described in division (E)(1) of this section shall not be prima-facie evidence of the contents, identity, or amount of any substance if, within seven days after the defendant to whom the report pertains or the defendant's attorney receives a copy of the report, the defendant or the defendant's attorney demands the testimony of the person who signed the report. The judge in the case may extend the seven-day time limit in the interest of justice."
 {¶ 14} R.C. 3701.143, referenced in R.C. 4511.19(D)(1), authorizes the director of health to determine the techniques or methods to be used in ascertaining the amount of alcohol and/or drugs in a person's blood. The director of health is also charged with approving satisfactory techniques or methods for *Page 9 
determining the qualifications of individuals to conduct the analyses, and issuing permits to qualified persons, and thereby authorizing them to perform such analyses. The director of health promulgated rules which are set forth in Ohio Adm. Code Chapter 3701-53. Ohio Adm. Code Chapter 3701-53-05 sets forth the regulation regarding how a bodily substance sample shall be collected:
 "(A) All samples shall be collected in accordance with section 4511.19, or section 1547.11 of the Revised Code, as applicable.
 "(B) When collecting a blood sample, an aqueous solution of a non volatile antiseptic shall be used on the skin. No alcohols shall be used as a skin antiseptic.
 "(C) Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested.
 "(D) The collection of a urine specimen must be witnessed to assure that the sample can be authenticated. Urine shall be deposited into a clean glass or plastic screw top container which shall be capped, or collected according to the laboratory protocol as written in the laboratory procedure manual
 "(E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains at least the following information:
 "(1) Name of suspect;
 "(2) Date and time of collection;
 "(3) Name or initials of person collecting the sample; and
 "(4) Name or initials of person sealing the sample.
 "(F) While not in transit or under examination, all blood and urine specimens shall be refrigerated." *Page 10 
 {¶ 15} At the hearing, the State argued that the affidavit and attached documentation set forth a prima facie case of compliance. The State has failed to set forth any evidence that it complied with the specific requirements set forth in Ohio Adm. Code Chapter 3701-53-05. O'Donnell vaguely testified in his affidavit that "the sample was collected in the correct container for the method described in the procedure manual and was sealed and labeled" and further that "the alcohol test was done using a method approved by the Ohio Department of Health." Upon review, we find that the State failed to demonstrate substantial compliance with Ohio Adm. Code Chapter 3701-53-05.Burnside, supra, at ¶ 36.
 {¶ 16} In addition, the record reflects that Appellant requested the presence of medical personnel as permitted under R.C. 4511.19(E)(3). Pursuant to this statute, Appellant negated the prima-facie evidence when he requested this testimony. However, at the second day of the suppression hearing, the State did not provide any such testimony. Furthermore, O'Donnell's affidavit does not comply with R.C. 4511.19. The affidavit states that the blood analysis was performed by M. Hershey. None of the documents provided by the State contain a signature of M. Hershey signed under oath as required under R.C. 4511.19(E)(1)(a).
 {¶ 17} The dissent contends that the State was not required to present specific evidence of its compliance because "Appellant never alleged anyspecific violation in the trial court at any point in the proceedings." The record does not *Page 11 
support this contention. Rather, the record reflects that at the first suppression hearing, the State explained to the court the specific basis on which Appellant sought to suppress the blood test results:
 "the defense has raised the issue of the qualifications of the laboratory at Akron General Hospital regarding the blood draw of the defendant on the night of the crash.
 "the defense has notified me and the court today that he would be challenging further the chain of custody and maybe some other certifications of the blood draw."
 {¶ 18} Although the State raised an objection to the specificity of the motion to suppress at the second hearing on the motion to suppress, the State waived this argument by failing to timely raise it. A party waives his opportunity for appellate review of any issue that he does not preserve by raising a timely objection. State v. Self (1990),56 Ohio St.3d 73, 81; State v. Heilman (Sept. 21, 1994), 9th Dist. No. 2312-M, at *3. Furthermore, the State has not raised the lack of specificity of Appellant's motion to suppress on appeal.
 {¶ 19} The State has failed to demonstrate substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53. Accordingly, the laboratory report is inadmissible. See Mayl, supra, at paragraph one of the syllabus ("the state must show substantial compliance with R.C.4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible"). This case presents a difficult factual scenario in that a life was tragically lost in an *Page 12 
alcohol related collision. The legislature and the Ohio Department of Health have set forth legislation and regulations which prescribe the manner in which evidence must be collected, preserved and presented. "[W]e are constrained to follow the law as it exists today[.]" Doe v.Archdiocese of Cincinnati, 109 Ohio St.3d 491, 2006-Ohio-2625, at ¶ 1. As a result, we find that the trial court erred in denying Appellant's motion to suppress with regard to the blood samples. Appellant's sole assignment of error is sustained.
 III. {¶ 20} Appellant's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of *Page 13 
Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
CARLA MOORE
FOR THE COURT
DICKINSON, J.
CONCURS, SAYING:
 {¶ 21} In its Brief to this Court, the State wrote:
 Since the affidavit and related documents do not comply with the statute the State concedes that the trial court erred in denying the motion to suppress.
 {¶ 22} Brief of Appellee — State of Ohio at 7. In view of the State's concession, I concur in the reversal of the trial court's judgment.
[1] In his motion to suppress, it appears that Appellant mistakenly cited R.C. 4911.19, which concerns public utilities, instead of R.C.4511.19, which sets forth regulations regarding blood draws.