[Cite as *State v. Hirsch*, 2014-Ohio-5388.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellant

    v.

JOHN H. HIRSCH

    Appellee

C.A. No.     13CA0025-M

APPEAL FROM JUDGMENT
ENTERED IN THE
MEDINA MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    12 TRC 06348

DECISION AND JOURNAL ENTRY

Dated: December 8, 2014

---

BELFANCE, Judge.

{¶1}    Appellant the State of Ohio appeals the decision of the Medina Municipal Court which granted the motion to suppress filed by Defendant-Appellee John Hirsch. For the reasons set forth below, we affirm.

I

{¶2}    Mr. Hirsch was stopped at a sobriety checkpoint in Medina County on October 27, 2012. While he was stopped, Officer Jeffrey Kenney became suspicious that Mr. Hirsch might be under the influence of alcohol and directed him to a separate area where field sobriety tests were conducted. Thereafter, Mr. Hirsch was arrested and charged with violating R.C. 4511.19(A)(1)(a) and 4511.19(A)(2).

{¶3}    Mr. Hirsch filed a motion to suppress asserting that "[t]he sobriety checkpoint * * * was established and operated in violation of the United States and Ohio Constitution[,]" that "[t]he police did not have probable cause to arrest the defendant[,]" and that the field sobriety

testing was not conducted in compliance with the applicable standards. The trial court ultimately concluded that this failure warranted the conclusion that "the checkpoint d[id] not meet U.S. or Ohio constitutional standards[]" and, thus, granted Mr. Hirsch's motion to suppress. Subsequently, the State appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE OBTAINED AGAINST DEFENDANT, JOHN H. HIRSCH, DURING A TRAFFIC STOP AT A SOBRIETY CHECKPOINT, IN THAT THE SOBRIETY CHECKPOINT WAS ESTABLISHED AND OPERATED IN ACCORDANCE WITH THE STANDARDS IN *STATE V. GOINES,* 16 OHIO APP.3D 168, MEETING U.S. AND OHIO CONSTITUTIONAL STANDARDS, AND OPERATING PURSUANT TO A PREDETERMINATION BY POLICY MAKING OFFICERS OF THE ROADBLOCK LOCATION, TIME AND PROCEDURES TO BE EMPLOYED, PURSUANT TO CAREFULLY FORMULATED STANDARDS AND NEUTRAL CRITERIA.

**{¶4}** While the State in its stated assignment of error argues that the trial court erred in granting Mr. Hirsch's motion to suppress because the sobriety checkpoint satisfied the standard set forth in *State v. Goines*, 16 Ohio App.3d 168 (2d Dist.1984), it did not develop an argument in support of its stated assignment of error. Instead, the State's actual argument is more limited. It maintains that Mr. Hirsch only raised a general challenge to the constitutionality of the checkpoint in his motion to suppress and that it responded to the "general challenges[.]" Thus, the State asserts it was not aware it would have to present additional evidence concerning the policies and procedures for the establishment of check points. In light of the foregoing, the State maintains that Mr. Hirsch had to come forth with evidence to demonstrate the unconstitutionality of the checkpoint.

**{¶5}** The Supreme Court of Ohio has held that

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

**{¶6}** In *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 450 (1990), the United States Supreme Court addressed the standard applicable for reviewing the constitutionality of sobriety checkpoints. The checkpoint at issue in *Sitz* was part of a pilot program with guidelines that were established by an advisory committee. *Id.* at 447. Under the program, "[a]ll vehicles passing through a checkpoint would be stopped and their drivers briefly examined for signs of intoxication." *Id.* If the officer detected signs of intoxication in a driver, the officer would direct that car out of the flow of traffic for follow up questioning and/or testing. *Id.* "Should the field tests and the officer's observations suggest that the driver was intoxicated, an arrest would be made." *Id.* The other drivers were allowed to continue on their way. *Id.*

**{¶7}** The checkpoint conducted pursuant to this pilot program resulted in each of the 126 vehicles passing through the checkpoint being stopped for an average of approximately 25 seconds.[1] *Id.* at 448. Two drivers were detained for field sobriety testing, one of whom was arrested for an OVI. *Id.* An additional driver was arrested for an OVI after driving through the checkpoint without stopping. *Id.*

**{¶8}** In reviewing the constitutionality of the checkpoint, the Michigan courts applied the balancing test articulated in *Brown v. Texas,* 443 U.S. 47 (1979). *Id.* at 448-449. The

---

[1] When initially stopped, the drivers were not asked to produce any form of identification such as a driver's license, but rather, the officers on scene were conducting a visual examination for signs of intoxication. *Sitz* at 447.

Michigan appellate court articulated the test as "balancing the state's interest in preventing accidents caused by drunk drivers, the effectiveness of sobriety checkpoints in achieving that goal, and the level of intrusion on an individual's privacy caused by the checkpoints." (Internal quotations and citation omitted.) *Id.* at 449. In finding the checkpoint unconstitutional, the courts found that, while the State had a grave interest in stopping drunk driving, sobriety checkpoints were ineffective and the subjective intrusion on personal liberties was substantial. *Id.*

{¶9} The United States Supreme Court in its review stated that, because "a Fourth Amendment 'seizure' occurs when a vehicle is stopped at a checkpoint[,] * * * [t]he question * * * becomes whether such seizures are 'reasonable' under the Fourth Amendment." *Id.* at 450. The Court declared that the relevant test was the balancing test found in *Brown* and *United States v. Martinez-Fuerte,* 428 U.S. 543 (1976). However, the Supreme Court, in applying that law to the facts of the case, reached the opposite conclusion – concluding the checkpoint was constitutional. *See Sitz* at 455. The Court agreed that drunk driving posed a serious problem, but, unlike the Michigan courts, concluded that the intrusion on motorists was "slight[,]" *id.* at 451, and that, "for constitutional purposes [the intrusion at issue was] indistinguishable from the checkpoint stops [the Court] upheld in *Martinez–Fuerte*." *Id.* at 453.[2]

{¶10} In *State v. Orr,* 91 Ohio St.3d 389 (2001), a case involving the constitutionality of a driver's license checkpoint, the Ohio Supreme Court, citing to *Sitz,* as well as *Martinez Fuerte,*[3] concluded that courts should conduct a case-by-case evaluation of the following factors

---

[2] The Supreme Court limited its analysis to the constitutionality of the checkpoint itself and did not analyze the applicable standard for further detention of a motorist as a result of stop initiated at the roadblock. *See Sitz* at 450-451.

[3] In *Martinez-Fuerte*, the United States Supreme Court examined the constitutionality of immigration checkpoints. *See Martinez-Fuerte* at 545.

in "determining the constitutionality of a police checkpoint[:] * * * (1) the particular checkpoint's intrusion on privacy, (2) the state's interest in maintaining the checkpoint, and (3) the extent to which the checkpoint advances the state interest." *Orr* at 392-393. The Ohio Supreme Court has not evaluated whether this test is the test to apply in evaluating the constitutionality of *sobriety* checkpoints; however, given that it referenced *Sitz* in articulating the test, absent other guidance, it is reasonable to conclude that the Ohio Supreme Court would apply the same test it articulated in *Orr*. This Court has previously applied the factors cited in *Orr* in evaluating the constitutionality of sobriety checkpoints. *See State v. Willard,* 9th Dist. Medina No. 04CA0045-M, 2005-Ohio-1627, ¶ 19, quoting *Orr* at 392-393.

{¶11} With respect to the constitutionality of the checkpoint, Mr. Hirsch asserted, in part, that the police officers failed to "follow the pre-determined procedures when they conducted a random stop of [Mr. Hirsch's] motor vehicle." The record reveals that, during the suppression hearing, the parties argued about the factors listed in *Goines*. In addition, it appears that both parties believe that the test set forth in *Goines* is applicable when evaluating the reasonableness of an OVI roadblock under the Fourth Amendment. In its entry, the trial court mentions and applies United States Supreme Court precedent, namely *Sitz*. However, in light of the focus of the parties, the trial court's entry addresses the test set forth in *Goines*. We note that the State has not challenged the trial court's application of the test articulated in *Goines,* despite the fact that neither this Court nor the Ohio Supreme Court has ever adopted or applied this test. However, because of the limited nature of the State's arguments, this Court need not decide whether the *Goines* test has any application in evaluating the constitutionality of checkpoints.[4]

---

[4] The test mentioned in *Goines* provides that "a vehicle stop may be made only where there minimally exists (1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists; (2) adequate advance warning signs, illuminated at night, timely

*See Orr* at 392-393. (adopting the test from *Sitz*); *see also Willard* at ¶ 19, quoting *Orr* at 392-393. We do not rule out the possibility that *Goines* could prove valuable in providing a context for evaluating and balancing the factors articulated in *Sitz* and *Orr*.[5]

**{¶12}** In the instant matter, the trial court made extensive factual findings, which have not been challenged on appeal. The trial court expressed concern that the State failed to demonstrate that it adhered to the policies and procedures that the State itself submitted into evidence. There is evidence in the record to support that concern. The trial court noted that none of the OVI arrest or crash data introduced into evidence related to the specific site chosen for the checkpoint. In its analysis, the trial court discussed the Ohio State Highway Patrol Policy Number OSP-200.21 ("the policy"), a document that was admitted by the State as an exhibit, and which details "guidelines for establishing and conducting roadside sobriety checkpoints." Several guidelines relate to the determination of the location and timing of the checkpoint. For instance, the guidelines indicate that "[t]he site of the proposed checkpoint must have a significant history of alcohol-related crashes and impaired driving violations." Additionally, the "time of day of the checkpoint must parallel the peak periods of alcohol crash involvement." The trial court concluded that there was no evidence to support that either guideline was followed. As noted above, the State has not contested the trial court's factual findings nor that

---

informing approaching motorists of the nature of the impending intrusion; (3) uniformed officers and official vehicles in sufficient quantity and visibility to show * * * the police power of the community; and (4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria." (Internal quotations and citations omitted.) *Goines,* 16 Ohio App.3d at 170-171.

[5] Courts in others states have adopted factor-based tests analytically similar to the test in *Goines* in evaluating the constitutionality of roadblocks. *See, e.g., State v. Kent,* 2011 ME 42 (2011). In *Kent,* for example, the Supreme Court of Maine, applied a 13-factor test in evaluating the constitutionality of a roadblock. *Id.* at ¶ 11. In so doing, the Court noted that the "list of factors is not an equally-weighted checklist; it merely identifies factual circumstances that apply in varying degrees to the balancing test employed in each individual case." *Id.*

this type of data would be important in evaluating the effectiveness of the checkpoint, i.e. the extent to which the checkpoint advances the State's interest. *See Orr,* 91 Ohio St.3d at 392-393; *see Willard,* 2005-Ohio-1627, ¶ 23 ("The advance publicity of the checkpoint served to deter drunk drivers, and the selection of a site known for its high incidence of drunk driving served to increase the likelihood of intercepting the undeterred, thus effectively furthering the State's interest in establishing the checkpoint."). While there was testimony that there were at least 2 crashes and/or arrests in the area of the checkpoint, the officer could not provide the specific numbers or evidence to indicate whether such figures would be a high number. Moreover, many of the statistics used in the site-selection process involved figures for the entire county and/or township and were not specific to the precise location of the checkpoint.

{¶13} Given that background, we turn to the State's arguments on appeal. First, we do not agree that Mr. Hirsch's motion to suppress lacked the specificity necessary to put the State on notice of what its burden would be at the suppression hearing. Mr. Hirsch asserted that "[t]he sobriety checkpoint in this case was established in violation of the United States and Ohio Constitution[.]" Additionally, Mr. Hirsch recited the test in *Goines* and specifically challenged compliance with the test's fourth prong, stating that "the police officers did not follow the pre-determined procedures when they conducted a random stop of the defendant's motor vehicle."

{¶14} Further, the State's argument is belied by its own actions at the suppression hearing. At the hearing, the State submitted as an exhibit the Ohio State Highway Patrol's policy detailing "guidelines for establishing and conducting roadside sobriety checkpoints." Thus, it seems clear that the State was aware of Mr. Hirsch's argument as it submitted the Ohio State Highway Patrol's policy, which, if the State could establish that policy was followed, could demonstrate that the officers complied with the part of the *Goines* test that Mr. Hirsch asserted

was not satisfied and which was relevant to evaluating the extent to which the checkpoint advanced the State's interest. The problem in this case is that the trial court found that the officers did not comply with the policy that the State submitted as evidence, not that the State was unaware of Mr. Hirsch's argument. Notably, the State has not challenged the trial court's factual findings on appeal. *See* App.R. 16(A)(7).

{¶15} Finally, the State failed to assert below that Mr. Hirsch's motion lacked specificity. Accordingly, even if the State's argument had merit, it would have forfeited this issue by failing to assert it below. *See State v. Self,* 56 Ohio St.3d 73, 81 (1990); *see also State v. Perez,* 9th Dist. Summit No. 23419, 2007-Ohio-2897, ¶ 18. The State's argument is without merit.

{¶16} In conjunction with the previous argument, the State maintains that, because Mr. Hirsch's motion was general in nature, its response was appropriate under the circumstances and, therefore, the burden shifted to Mr. Hirsch to contradict the State's evidence. However, as we indicated above, Mr. Hirsch's argument was not so general as to cause the State to be unaware of the precise issues that Mr. Hirsch was raising. As the State's secondary argument depends upon its primary argument having validity, we likewise overrule this argument.

{¶17} As these are the only arguments raised in the contents of the State's appellate brief, *see* App.R. 16(A)(7), we overrule the State's sole assignment of error. The State has not demonstrated that the trial court erred in granting Mr. Hirsch's motion to suppress.

III.

{¶18} In light of the foregoing, we affirm the judgment of the Medina Municipal Court.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶19} I respectfully dissent. With respect to evaluating the constitutionality of sobriety checkpoints, this Court has embraced the standard set out by the Supreme Court of Ohio in *State v. Orr*, 91 Ohio St.3d 389 (2001). *State v. Willard*, 9th Dist. Medina No. 04CA0045-M, 2005-Ohio-1627, ¶ 19. In *Orr*, the high court held that determining the constitutionality of a police checkpoint involves a case-by-case evaluation of three factors, namely "(1) the particular checkpoint's intrusion on privacy, (2) the state's interest in maintaining the checkpoint, and (3)

the extent to which the checkpoint advances the state interest." *Orr* at 392-393, citing *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990). The application of these factors allows a reviewing court to determine whether a sobriety checkpoint "served to ameliorate the 'fear and surprise engendered in law abiding motorists' stopped by the checkpoint, reducing the intrusiveness of the checkpoint to a permissible level." *Willard* at ¶ 21, citing *Sitz* at 452-453; *United States v. Martinez-Fuerte*, 428 U.S. 543, 558 (1976). In support of his suppression motion, Hirsch relied on the authority of *State v. Goines,* 16 Ohio App.3d 168 (2d Dist.1984). Hirsch placed particular emphasis on the fourth *Goines* factor in support of his position that the police failed to follow pre-determined procedures when they conducted a random stop of his vehicle. Unfortunately, the arguments advanced by the parties below, particularly with respect to the standardized procedures of the Ohio State Highway Patrol, resulted in the trial court analyzing the sobriety checkpoint at issue here under the standard set forth in *Goines*. The trial court issued a written decision with extensive findings and found that the State failed to produce evidence to satisfy the fourth factor of the *Goines* test. As the *Goines* test has not been adopted by this Court or the Supreme Court of Ohio, I would hold that the trial court erred by applying that standard in this case. I would remand this matter for the trial court to analyze the checkpoint at issue in this case under the standard articulated by the Supreme Court in *Orr*.

APPEARANCES:

DEAN HOLMAN, Prosecuting Attorney, and KEVIN W. DUNN, J. MATTHEW LANIER, RICHARD BARBERA, and GREGORY HUBER, Assistant Prosecuting Attorneys, for Appellant.

NEAL M. JAMISON, Attorney at Law, for Appellee.