[Cite as *State v. Gibson*, 2022-Ohio-3862.]

STATE OF OHIO          )          IN THE COURT OF APPEALS
                       )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN       )

STATE OF OHIO                              C.A. No.      21CA011847

    Appellant

    v.                                     APPEAL FROM JUDGMENT
                                           ENTERED IN THE
LAVELL GIBSON                              COURT OF COMMON PLEAS
                                           COUNTY OF LORAIN, OHIO
    Appellee                               CASE No.      21CR104074

DECISION AND JOURNAL ENTRY

Dated: October 31, 2022

---

CARR, Judge.

{¶1}    Appellant, the State of Ohio, appeals from the decision of the Lorain County Court of Common Pleas, granting a motion to suppress filed by Appellee, Lavell Gibson.  This Court reverses and remands for further proceedings.

I.

{¶2}    While on patrol one evening, Officer Joanna Catalano responded to the intersection of Lorain Boulevard and Midway Boulevard based on a report of a reckless driver.  She spotted the stopped vehicle at issue obstructing the intersection and pulled behind it to investigate.  Gibson, the driver, was alone inside the vehicle.  Officer Catalano observed that he had bloodshot, glossy eyes and slurred speech.  She also detected an odor of alcohol coming from his vehicle and asked Gibson whether he had been drinking.  Although he initially said he had not consumed any alcohol that evening, Gibson then changed his statement and said he had consumed two drinks a few hours

earlier. When Officer Catalano asked Gibson if he would be willing to submit to field sobriety testing, Gibson agreed.

{¶3} Due to safety concerns and other logistical considerations, Officer Catalano decided to transport Gibson to the nearby police station to conduct his field sobriety tests. Pursuant to departmental policy and for her safety, she patted him down and handcuffed him before placing him in the back of her cruiser and driving him to the station. Meanwhile, a second officer remained with Gibson's vehicle and waited for a tow truck to arrive. Gibson failed the field sobriety tests Officer Catalano administered at the station. He also refused to undergo a chemical test.

{¶4} As a result of the foregoing incident, Gibson was charged with violating R.C. 4511.19(A)(1)(a) (operating a vehicle under the influence of alcohol ("OVI")) and R.C. 4511.19(A)(2) (OVI with a prior OVI conviction and refusal to submit to a chemical test). He moved to suppress the evidence against him on the basis that, at the time Officer Catalano arrested him, she lacked probable cause for his arrest. It was Gibson's position that Officer Catalano arrested him when she handcuffed him, placed him in the back of her cruiser, and transported him to the police station. The State responded in opposition to the motion to suppress, and Gibson filed a reply. Following a suppression hearing, the trial court granted Gibson's motion to suppress.

{¶5} The State now appeals from the trial court's suppression ruling and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO SUPPRESS EVIDENCE.

{¶6} In its sole assignment of error, the State argues that the trial court erred when it granted Gibson's motion to suppress. It is the State's contention that Gibson was not placed under

arrest until he refused to submit to a chemical test at the police station. Alternatively, the State argues that Officer Catalano had probable cause to arrest Gibson when she transported him to the police station. For the following reasons, this Court sustains the State's assignment of error.

{¶7} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶8} "Encounters with police span a continuum from consensual encounters to investigatory stops to seizures tantamount to an arrest." *State v. Mason*, 9th Dist. Summit No. 27715, 2016-Ohio-7081, ¶ 20. Consensual encounters do not trigger Fourth Amendment protections, but investigatory detentions require reasonable suspicion and arrests require probable cause. *Id.* Because investigatory detentions do not require probable cause, *id.*, they must be limited in scope and duration. *Florida v. Royer*, 460 U.S. 491, 500 (1983). If a detention "exceeds the bounds of an investigatory stop, it may be tantamount to an arrest." *State v. Snyder*, 9th Dist. Medina No. 06CA0018-M, 2006-Ohio-6911, ¶ 13.

{¶9} The question of whether an officer had probable cause to arrest a defendant "is a fact-intensive inquiry * * *." *State v. Davis*, 9th Dist. Summit No. 29273, 2020-Ohio-473, ¶ 19. "An officer has probable cause to arrest an individual for impaired driving if, 'at the time of arrest,

the officer had sufficient facts derived from a reasonably trustworthy source to cause a prudent person to believe the suspect was driving under the influence.'" *State v. Spees*, 9th Dist. Medina No. 17CA0061-M, 2018-Ohio-2568, ¶ 30, quoting *State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 8. This determination "'is made from the totality of the circumstances.'" *State v. White*, 9th Dist. Wayne No. 05CA0060, 2006-Ohio-2966, ¶ 24, quoting *State v. Shull*, 5th Dist. Fairfield No. 05-CA-30, 2005-Ohio-5953, ¶ 20. "[A]n officer need not administer field-sobriety tests, nor witness erratic driving in order to have probable cause to arrest a driver for driving under the influence." *State v. Delong*, 9th Dist. Lorain No. 18CA011306, 2018-Ohio-5262, ¶ 15. The State may "'rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.'" *State v. Slone*, 9th Dist. Medina No. 04CA0103-M, 2005-Ohio-3325, ¶ 9, quoting *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 WL 1313665, *5 (Dec. 17, 1999). "The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a conviction of that crime at trial." *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11.

{¶10} The trial court made each of the following findings of fact. Around 8:12 p.m., Officer Catalano received a dispatch regarding a black, four-door sedan driving recklessly around the intersection of Lorain Boulevard and Midway Boulevard. She arrived in the area within minutes of the dispatch and saw a vehicle matching that description. The vehicle was stopped in front of the stop bar on the road and was obstructing the intersection. After pulling behind the vehicle and activating her cruiser's lights, Officer Catalano approached the vehicle on foot to speak with the driver. She identified Gibson as the driver of the vehicle.

{¶11} As Officer Catalano spoke with Gibson, she noted he had bloodshot and glossy eyes as well as slurred speech. She also detected the odor of alcohol coming from his vehicle and asked Gibson if he had been drinking. Gibson initially denied that he had been drinking but then said he had consumed two drinks earlier that evening. When Officer Catalano asked Gibson if he would submit to field sobriety testing, Gibson agreed to take the tests.

{¶12} Officer Catalano had Gibson exit his vehicle. Because she and Gibson were standing in the middle of an intersection, Officer Catalano did not feel it was safe to conduct the field sobriety tests in that location. The trial court found that there were "several parking lots in the area, including a new parking lot that [was] well-lit at a nearby Get Go," but that, "for her safety," Officer Catalano "believed the best place to conduct the tests was at the police station." As a result, Officer Catalano transported Gibson to the Elyria Police Department while a second officer remained on scene to oversee the towing of his vehicle. Before placing Gibson in the back of her cruiser to transport him to the police station, Officer Catalano patted him down and placed him in handcuffs.

{¶13} The trial court found that Officer Catalano's actions in placing Gibson in the back of her police cruiser for transport "did not automatically transform [her] investigatory detention into a formal arrest that require[d] probable cause." Even so, the court determined that the investigative detention Officer Catalano conducted lasted longer than was reasonably necessary for her to confirm or dispel her suspicions. The court found that "the safety concerns related to the location of the stop did not justify continued detention in the back of [her] cruiser to allow [her] to handcuff Gibson, make a decision to tow his vehicle, and transport him all the way to the police department when conditions to perform the [field sobriety] test were not necessarily unsafe though not preferred." The court found that Gibson was under arrest "prior to [] arriving at the

Elyria Police Department" and, at that time, Officer Catalano lacked probable cause to arrest. Consequently, the trial court granted Gibson's motion to suppress.

{¶14} The State argues that the trial court erred when it concluded that Gibson's arrest occurred before he and Officer Catalano arrived at the police station. According to the State, Officer Catalano lacked the intent to arrest Gibson at that time. Further, the State challenges the trial court's factual finding that parking lots near the scene of the stop "were not necessarily unsafe[.]" It is the State's position that Gibson remained under investigative detention until he refused a chemical test at the police station. Alternatively, the State argues that Officer Catalano possessed probable cause to arrest Gibson at the scene based on her observations and the totality of the circumstances.

{¶15} Because this Court need only accept the trial court's factual findings as true if they are based on competent, credible evidence, we begin by outlining the evidence introduced at the suppression hearing. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Officer Catalano was the only witness who testified at that hearing and offered the following testimony.

{¶16} At 8:12 p.m., Officer Catalano received a dispatch about a black, four-door sedan driving recklessly around the area of Lorain Boulevard and Midway Boulevard. It only took her a few minutes to arrive in the area and, as she drove, she received updated information from the dispatcher. She learned that the vehicle had stopped at the intersection of Lorain Boulevard and Midway Boulevard. Upon her arrival, she spotted the vehicle and pulled behind it. Officer Catalano testified that the vehicle was stopped in one of two left-turn lanes and was obstructing the intersection because it had stopped past the stop bar. Although the traffic light was changing, Office Catalano stated, the vehicle remained stationary. Once she activated her cruiser's overhead lights, Officer Catalano went to speak with the vehicle's driver.

{¶17}   Officer Catalano identified Gibson as the vehicle's driver.  She testified that, when she spoke with Gibson, his eyes appeared to be bloodshot and glossy.  Gibson's speech was also "very slurred[,]" and Officer Catalano detected an odor of alcohol coming from his vehicle.  When Officer Catalano asked Gibson whether he had had anything to drink, he initially said no.  He then changed his statement and said he had consumed two drinks earlier that evening.  At that point, Officer Catalano asked Gibson whether he would be willing to undergo field sobriety testing, and Gibson agreed to perform the tests.

{¶18}   Officer Catalano testified that a second officer arrived on scene during her exchange with Gibson, and the two discussed the situation.  She testified that the stop occurred in the middle of the intersection, so it was a "very dangerous place" to be and not an appropriate location for the field sobriety tests she needed to administer.  Although there were some surrounding businesses and stores, Officer Catalano and her fellow officer decided that she (Officer Catalano) should transport Gibson to the nearby police station to administer the tests.  Officer Catalano testified that their decision to transport Gibson to the station was based on several factors.  First, the transport to the station would ensure that Officer Catalano was not alone with Gibson when she conducted the tests.  Second, Officer Catalano knew the police station would offer a flat, well-lit surface for the field sobriety tests.  Third, the police station was "less than five minutes away."

{¶19}   Officer Catalano testified that she patted down and handcuffed Gibson before placing him in her cruiser and driving him to the police station.  She stated that she performed both actions to comply with departmental policy and to ensure her safety.  Regarding Gibson's vehicle, Officer Catalano testified that a decision was made to tow it from the scene because Gibson "was

in no state to drive[,]" no one else was available to retrieve it for him, and the vehicle could not remain sitting in the intersection.

{¶20} Although the State challenges one of the trial court's factual findings (i.e., that nearby parking lots "were not necessarily unsafe"), that finding only relates to the State's investigatory detention argument. *See Royer*, 460 U.S. at 500 (1983) (noting that investigatory detentions must employ "the least intrusive means reasonably available"). The State has not challenged any of the trial court's other factual findings, and the record supports the conclusion that those findings are based on competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. The State has included as an alternative argument that Officer Catalano had probable cause to arrest Gibson at the scene. Because this appeal may be resolved upon that alternative argument, this Court need not determine whether the trial court erred when it found that nearby parking lots "were not necessarily unsafe[.]"

{¶21} Assuming without deciding that Officer Catalano arrested Gibson before transporting him to the police station, the record supports the conclusion that the arrest was based on probable cause. The Ohio Supreme Court has found that erratic or reckless driving, when coupled with other factors such as bloodshot eyes, the smell of alcohol, and an admission to drinking, amounts to probable cause for an OVI arrest even where no field sobriety tests have been administered. *State v. Homan*, 89 Ohio St.3d 421, 427 (2000). Officer Catalano responded to the scene based on a report of reckless driving and, when she arrived, she found Gibson's vehicle blocking the intersection. She observed that Gibson had bloodshot and glossy eyes as well as "very slurred" speech. *See State v. Willard*, 9th Dist. Medina No. 04CA0045-M, 2005-Ohio-1627, ¶ 29. She also detected an obvious odor of alcohol coming from his vehicle, and Gibson gave her inconsistent statements about whether he had consumed any alcohol that evening. *See State v.*

*Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 19. "Even if one or more of the foregoing factors, standing alone, would have been insufficient to establish probable cause, a probable cause analysis requires a court to consider the totality of the circumstances." *State v. McQuistan*, 9th Dist. Medina No. 17CA0007-M, 2018-Ohio-539, ¶ 15. Based on the totality of the circumstances herein, we must conclude that Officer Catalano had probable cause to suspect Gibson was driving while impaired. *See Homan* at 427; *Slone*, 2005-Ohio-3325, at ¶ 9, quoting *Holland*, 1999 WL 1313665, at *5. *Compare State v. Hopp*, 9th Dist. Summit No. 28095, 2016-Ohio-8027, ¶ 11 (concluding that probable cause did not exist where there was no indication of erratic driving and defendant's speech was only slightly slurred). The trial court, therefore, erred when it reached a contrary conclusion and granted Gibson's motion to suppress. The State's sole assignment of error is sustained on that basis.

III.

**{¶22}** The State's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellant.

DOUGLAS W. MERRILL, Attorney at Law, for Appellee.